OPINION OF THE COURT
VANASKIE, Circuit Judge.
Appellant Jeffrey Wiest brought an action under the whistleblower protection provisions set forth in Section 806 of the Sarbanes-Oxley Act (“SOX”), 18 U.S.C. § 1514A, and under Pennsylvania law against Appellees Tyco Electronics Corporation and several officers and directors of Tyco Electronics (collectively, “Tyco”). The District Court granted Tyco’s Motion to Dismiss the federal whistleblower claims, declined to exercise supplemental *124 jurisdiction over the state law claims, and denied Wiest’s Motion for Reconsideration. Concluding that the District Court erred in requiring that Wiest allege that his communications to his supervisors “definitively and specifically relate to” an existing violation of a particular anti-fraud law, as opposed to expressing a reasonable belief that corporate managers are taking actions that could run afoul of a particular anti-fraud law, we will reverse, in part, the dismissal of the federal whistleblower claims and vacate the dismissal of the state law claim.
I.
A. Background
According to the Complaint, Wiest worked for approximately thirty-one years in Tyco’s accounting department until his termination in April 2010. For Wiest’s last ten years of employment, his office was under “a high level of audit scrutiny” due to the well-known corporate scandal involving its former parent company, Tyco International, and its CEO, Dennis Kozlowski. (App. 42, ¶ 31.) Around 2007, Wiest “established a pattern of rejecting' and questioning expenses” that failed to satisfy accounting standards or securities and tax laws. (Id. at 43, ¶ 33.)
1. The Atlantis Resort Event
In mid-2008, Wiest refused to process a payment and sent an email to his supervisor regarding an event that Tyco intended to hold at the Atlantis Resort in the Bahamas, which was similar to a corporate party under Kozlowski’s management that had drawn significant criticism. Expenses for the $350,000 Atlantis event included “Mermaid Greeters” and “Costumed Pirates/Wenches” at a cost of $3,000; a “Tattoo Artist (includes tattoos)” and “Limbo” and “Fire” at a cost of $2,350; chair decorations at a cost of $2,500; and hotel room rentals ranging from $475 to $1,000 per night. (Id. at 45, ¶ 41.) In an email to his supervisor, Wiest expressed his belief that the costs were inappropriately charged entirely as advertising expenses. He asserted that the costs needed to be detailed and charged as income to attending employees because the employees were bringing guests, and the expenses needed to “be reviewed for potential disallowance by a taxing authority based on excessive/extravagant spend [sic] levels.” (Id. at 84, Ex. E.) Following Wiest’s email, Tyco’s management determined that the five-day event included only a single one-and-one-half hour business meeting. As a result, they determined that processing the payment “would have resulted in a misstatement of accounting records and a fraudulent tax deduction,” and that Tyco needed to treat the event as income for attending employees. (Id. at 43-44, ¶ 35.) Tyco decided to proceed with the event and to compensate the attendees for the additional tax liability by increasing (i.e., “grossing-up”) their bonuses.
2. The Venetian Resort Event
Also in mid-2008, Wiest received a request to process a payment of $218,000 for a conference at the Venetian Resort in Las Vegas, Nevada. The request lacked both sufficient documentation for tax purposes and proper approval pursuant to Tyco’s “delegation of authority.” Additionally, the request included inaccurate accounting and tax treatment information. At Wiest’s direction, one of his subordinates sent an email to the Tyco employee who submitted the request, explaining that the accounts payable department could not process the request until it had received an agenda and business purpose for the event, correct accounting treatment for various expenses, and approval pursuant to Tyco’s delegation of authority. The tax department eventu *125 ally concluded that the conference served a business purpose, and the accounts payable department subsequently allowed the payment.
3.The Wintergreen Resort Event
In late 2008, Wiest was presented with a request for approval of a conference at the Wintergreen Resort in Virginia in the amount of $335,000. Like the Venetian Resort request, the Wintergreen expense request lacked both sufficient documentation and proper approval from Tyco’s CEO. Wiest emailed his supervisor, explaining that he believed Tyco’s internal policies required that the CEO be notified about the transaction. To the best of Wi-est’s knowledge, Tyco processed the payment without the CEO’s approval, in violation of Tyco’s internal policies.
4.Other Matters
Wiest also alleges that he questioned other events between 2007 and 2009. In particular, he questioned expenses for a “relatively lavish ‘holiday party,’ ” a $52,000 audit team meeting, and an employee baby shower. (Id. at 49, ¶ 55.) He also sent an email to management when he received an expense request from an employee that included duplicate entries, additional nights of hotel bills, and undocumented expenses. He informed management that processing that improper expense request would constitute invalid or undocumented business expenses if Tyco was not reimbursed or if the amount was not reported as income on the employee’s W-2 form.
5.Termination of Employment
Wiest alleges that Tyco became frustrated with his persistence in following proper accounting procedures. In September 2009, two human resources employees met with Wiest and informed him that he was under investigation for incorrectly reporting the receipt of two basketball game tickets in August 2009, for having a relationship with a coworker ten years earlier, and for allegedly making sexually-oriented comments to co-workers. After Wiest learned of the investigation, his health declined and he went on medical leave. Seven months later, Tyco terminated his employment.
B. Procedural History
On July 7, 2010, Wiest sued the Tyco Defendants, asserting that his discharge was in retaliation for his reports of improper expenditures, in violation of Section 806 of SOX. That section prohibits certain employers from discriminating against employees for reporting information that they reasonably believe constitutes a violation of one of several enumerated provisions relating to fraud and securities regulations. See 18 U.S.C. § 1514A.[1] Wiest also presented state law claims, including intentional infliction of emotional distress and wrongful termination, and his wife brought a claim for loss of consortium. Tyco moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Wiest failed to state a prima facie claim under Section 806.
As to the threshold question for a prima facie case in a retaliation case under Section 806 — whether the Complaint sufficiently alleges that the plaintiff had engaged in “protected activity,” see 29 C.F.R. § 1980.104(e)(2)(i) — the District Court determined that Wiest had to allege that his communications (a) “definitively and spe *126 cifically” related to a statute or rule listed in Section 806; (b) expressed “ ‘an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked loss;’ ” and (c) “reflect[ed] a reasonable belief of an existing violation.” Wiest v. Lynch, Civil Action No. 10-3288, 2011 WL 2923860, at *4 (E.D.Pa. July 21, 2011) (citations omitted). In concluding that a communication must “definitively and specifically” relate to a violation of a statute or rule listed in Section 806, the District Court relied upon the decision of the U.S. Department of Labor Administrative Review Board (“ARB”) in Platone v. FLYI, Inc., ARB 04-154, 2006 WL 3246910, at *8 (Dep’t of Labor Sept. 29, 2006), aff'd 548 F.3d 322 (4th Cir.2008), and court decisions that endorsed Pla-tone’s “definitive and specific” standard. Finding that the allegations of the Complaint failed to satisfy this standard, the District Court did not reach the other elements of a prima facie Section 806 case, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the Complaint without prejudice.
The District Court’s Order dismissing the Complaint granted Wiest leave to file an amended complaint. Rather than filing an amended complaint, Wiest, on August 10, 2011, presented a motion entitled “Motion for Reconsideration Nunc Pro Tunc By the Eastern District Court En Banc of Judge Pratter Memorandum Opinion of July 21, 2011, Or, In the Alternative, Motion to Dismiss Plaintiffs’ Complaint with Prejudice and Enter a Final Appealable Order and Judgment” (“Motion for Reconsideration”). In his Motion for Reconsideration, Wiest raised for the first time the argument that the ARB overruled Pla-tone ’s “definitive and specific” standard in favor of a “reasonable belief’ standard in Sylvester v. Parexel Int’l LLC, ARB 07-123, 2011 WL 2165854, at *11 (Dep’t of Labor May 25, 2011) (en banc). Wiest argued that he was entitled to reconsideration because Sylvester was an intervening change in controlling law, and that the District Court’s reliance on the ARB’s prior Platone decision was a clear error of law.
The District Court disagreed, reasoning that Sylvester was not an intervening decision because, although the ARB issued Sylvester after the parties completed briefing on Tyco’s Motion to Dismiss, the opinion preceded the District Court’s ruling. Additionally, the District Court determined that Sylvester was not controlling precedent, and that even if it was binding, reconsideration was not warranted because (1) its initial decision relied on cases other than Platone, and (2) Sylvester’s alteration of the standard for demonstrating protected activity did not change its conclusion that Wiest failed to establish that he communicated an objectively reasonable belief that Tyco’s conduct violated any statute or rule listed in Section 806.
Wiest filed a notice of appeal on November 23, 2011, to appeal the District Court’s Order denying his Motion for Reconsideration. Wiest did not expressly indicate whether he also was appealing the District Court’s initial Order dismissing the Complaint.
II.
The District Court had jurisdiction under 28 U.S.C. § 1331 and we have appellate jurisdiction under 28 U.S.C. § 1291.
A.. Procedural Issues
Before turning to the merits, we must address three procedural issues. First, Tyco argues that, because Wiest filed his Motion for Reconsideration twenty days after the District Court entered its dismissal Order, the Motion was untimely *127 under E.D. Pa. L.R. 7.1(g), which establishes a fourteen day period to file motions for reconsideration.[2] As a result, Tyco asserts that we lack jurisdiction over Wiest’s appeal from the District Court’s denial of reconsideration.
We see no jurisdictional bar due to Wiest’s failure to move for reconsideration within the time constraints established by a local rule of court. We have recognized that, in the context of a Federal Rule of Civil Procedure 59(e) motion to alter or amend a judgment, the prescribed time limits are claims-processing rules, rather than jurisdictional rules. Lizardo v. United States, 619 F.3d 273, 276-77 (3d Cir.2010). If the time limit contained within Rule 59(e) is not jurisdictional, we cannot see how the time limit contained within Local Rule 7.1(g) is jurisdictional. In any event, we need not address the consequences of an untimely motion for reconsideration under a local rule because we construe Wiest’s motion as one under Rule 59(e). See, e.g., Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir.1986) (“For purposes of Rule 4(a) of the Federal Rules of Appellate Procedure, we view a motion characterized only as a motion for reconsideration as the functional equivalent of a Rule 59(e) motion to alter or amend a judgment.”) (internal quotation marks omitted); see also Green v. Drug Enforcement Admin., 606 F.3d 1296, 1299 (11th Cir.2010) (noting the prevalence of courts construing motions for reconsideration as Rule 59(e) motions); Auto Servs. Co. v. KPMG, LLP, 537 F.3d 853, 856 (8th Cir.2008) (“A ‘motion for reconsideration’ is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed as either a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment.”). Because Wiest filed his Motion for Reconsideration within Rule 59(e)’s twenty-eight day time limit, we conclude that the motion was timely.
Tyco also argues that the scope of our review is limited to the District Court’s November 2011 Order denying reconsideration because Wiest did not designate for appeal the District Court’s July 2011 Order granting Tyco’s Motion to Dismiss. When a party appeals only a specified judgment, we acquire jurisdiction to review only that judgment or a judgment “ ‘fairly inferred’ ” by the notice of appeal. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir.2010) (quoting Elf-man Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir.1977)). Yet, we have also held that we “liberally construe[] notices of appeal.” Id. (internal quotations marks omitted). We may exercise appellate jurisdiction over orders not specified in the notice of appeal where: “(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.” Id. (internal quotation marks omitted).
Here, there is an adequate connection between the District Court’s Order denying reconsideration and its underlying Order granting Tyco’s Motion to Dismiss because Wiest requested the District Court to reconsider the legal standard it applied to his Section 806 claims in the original dismissal Order. Second, because the two Orders of the District Court were intertwined, we infer that Wiest intended to appeal the underlying dismissal Order. Wiest’s intention was apparent in his principal brief, in which he argues that the *128 District Court erred in granting Tyco’s Motion to Dismiss because it relied on the Platone standard rather than Sylvester and cites the District Court’s dismissal Order throughout the brief. Third, we find no prejudice to Tyco in reviewing the underlying dismissal Order as Tyco has had a full opportunity to brief the corresponding issues.[3] As a result, we exercise jurisdiction over both the District Court’s November 2011 Order denying Wiest’s Motion for Reconsideration and its July 2011 Order granting Tyco’s Motion to Dismiss.
Finally, we also reject Tyco’s third procedural argument that Wiest waived any arguments based on Sylvester because he failed to raise those arguments in his brief in opposition to Tyco’s Motion to Dismiss. Although the District Court noted that Wiest first brought Sylvester to its attention in his Motion for Reconsideration and that a motion for reconsideration should not raise new arguments that the party could have made previously, the District Court proceeded to address Sylvester in its reconsideration ruling. The District Court evidently did not deem Wiest to have waived any arguments based on Sylvester, and neither do we.
B. Standard of Review
We have held that “a proper Rule 59(e) motion ... must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.” Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir.2010) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)). We generally review a district court’s denial of reconsideration for abuse of discretion. Max’s Seafood Cafe v. Quinteros, 176 F.3d 669, 673 (3d Cir.1999) (citing N. River Ins., 52 F.3d at 1203). An “errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact” may result in an abuse of discretion. McDowell v. Phila. Housing Auth., 423 F.3d 233, 238 (3d Cir.2005). More specifically, when a district court predicates its denial of reconsideration on an issue of law, our review is plenary, and when it bases its denial on an issue of fact, we review for clear error. Id.
In addition, we review a district court’s dismissal pursuant to Rule 12(b)(6) de novo. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir.2008). In Long v. Atlantic City Police Department, 670 F.3d 436 (3d Cir.2012), we concluded that the standards of review for an underlying dismissal order and for the denial of a motion for reconsideration of the dismissal order are functionally equivalent, because we exercise plenary review of the dismissal order as well as of the legal questions in the denial of reconsideration. Id. at 446 & n. 20, 447. Because the issue here is whether the District Court applied the correct legal standard to a claim under Section 806 of SOX, our review is plenary regardless of whether we review the District Court’s application of the standard in its initial dismissal Order or its subsequent Order denying reconsideration.
C. Whistleblower Claims Under Section 806 of SOX
SOX Section 806 prohibits publicly traded companies and their employees from retaliating against an employee who
*129 provide[s] information, eause[s] information to be provided, or otherwise assists] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire, radio, or television fraud], 1344 [bank fraud], or 1348 [securities and commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information is provided to or the investigation is conducted by ... a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) ....
18 U.S.C. § 1514A. To establish a prima facie case for a Section 806 claim, the employee must allege that he or she (1) “engaged in a protected activity;” (2) “[t]he respondent knew or suspected that the employee engaged in the protected activity;” (3) “[t]he employee suffered an adverse action;” and (4) “[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.” 29 C.F.R. § 1980.104(e)(2)(i)-(iv).
Section 806 provides that an employee alleging discrimination in violation of SOX may file a complaint with the Secretary of Labor, who may issue a final order. 18 U.S.C. § 1514A(b)(1)(A), (2) (incorporating the Department of Labor complaint procedures under 49 U.S.C. § 42121(b)). If the Secretary fails to issue a final decision within 180 days of the filing of the complaint, the complainant may also file a civil action in federal district court. Id. § 1514A(b)(1)(B). The Secretary of Labor has delegated the authority to review appeals under Section 806 and issue final agency decisions to the ARB. Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 75 Fed. Reg. 3924, 3924-25 (Jan. 25, 2010).
Focusing on the “protected activity” prong in its Memorandum accompanying its Order granting Tyco’s Motion to Dismiss, the District Court invoked the ARB’s opinion in Platone and concluded that “[f]or a communication to be protected, it must ‘definitively and specifically’ relate to one of the statutes or rules listed in” Section 806. Wiest, 2011 WL 2923860, at *4. The Court of Appeals cases cited by the District Court in support of its application of the “definitive and specific” standard either relied upon or cited with approval Platone’s standard. See Van Asdale v. Int’l Game Tech., 577 F.3d 989, 996-97 (9th Cir.2009) (deferring to Platone’s “definitive and specific” standard as a reasonable interpretation of the statute); Day v. Staples, Inc., 555 F.3d 42, 55 (1st Cir.2009) (quoting the Fourth Circuit’s opinion affirming the ARB’s decision in Platone in which the court employed the “definitive and specific” standard); Allen v. Admin. Review Bd., 514 F.3d 468, 476-77 (5th Cir.2008) (‘We agree with the ARB’s legal conclusion that an employee’s complaint must ‘definitively and specifically relate’ to one of the six enumerated categories found in” Section 806).
In Sylvester, however, the ARB abandoned the “definitive and specific” standard announced in Platone. Sylvester, 2011 WL 2165854, at *15. The ARB noted that the test adopted in Platone originated in eases under the whistleblower provision in the Energy Reorganization Act, 42 U.S.C. § 5851 (“ERA”). Id. at *14. The ARB explained that, in addition to enumerating specific activities for which employers cannot retaliate against employees, the whistleblower provision of the ERA contains a catch-all provision to protect employees who “assist or participate in ‘a *130 proceeding ... or any other action [designed] to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended.’ ” Id. (quoting 42 U.S.C. § 5851(a)(1)(F)). According to the ARB, because the ERA does not define “any other action to carry out the purposes of this chapter,” courts interpreted that phrase to require that an employee’s activity definitively and specifically implicate safety because of the ERA’s purpose of protecting employee actions involving nuclear safety. Id.
As the ARB recognized in Sylvester, the SOX whistleblower provision does not contain language similar to the ERA’s catchall provision. Id. Instead, it expressly enumerates the laws and rules to which it applies. Therefore, the ARB concluded that the importation of the definitive and specific standard is “inapposite to the question of what constitutes protected activity under SOX’s whistleblower protection provision.” Id. Moreover, the ARB determined that the definitive and specific standard potentially conflicts with the statutory language of Section 806, which prohibits retaliation against employees for reporting information that he or she reasonably believes violates SOX. Id,[4]
SOX does not define what constitutes a “reasonable belief.” The ARB interprets the phrase to require that the plaintiff have a subjective belief that the employer’s conduct violates a provision listed within Section 806 and that the belief is objectively reasonable. Id. at *11-12. Indeed, as the ARB noted in Sylvester, the legislative history of Section 806 provides that Congress intended this reasonable belief standard to “impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts (See generally, Passaic Valley Sewerage Commissioners v. U.S. Department of Labor, 992 F.2d 474, 478 [3d Cir.1993]).” Id. at *11 (quoting S.Rep. No. 107-146, at 19 (2002)).
The ARB opined that to meet the subjective element, the plaintiff must actually have believed that the conduct in question violated the laws enumerated in SOX. Id. The ARB explained that “the legislative history of Sarbanes-Oxley makes clear that its protections were ‘intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise.’ ” Id. (alteration omitted) (quoting Van Asdale v. Int’l Game Tech., 577 F.3d 989, 1002 (9th Cir.2009) (quoting 148 Cong. Rec. S7418-01, (daily ed. July 26, 2002))). Regarding the objective element, the ARB clarified that the plaintiffs belief “is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experi *131 ence as the aggrieved employee.” Id. at *12 (quoting Harp v. Charter Commc’ns, Inc., 558 F.3d 722, 723 (7th Cir.2009)).
We conclude that the ARB’s rejection of Platone’s “definitive and specific” standard is entitled to Chevron deference. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (“If ... the court determines Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency’s answer is based on a permissible construction of the statute.”). As previously discussed, Section 806 provides that an employee seeking whistle-blower protection under SOX may file a complaint with the Secretary of Labor, who may issue a final order. 18 U.S.C. § 1514A(b)(1)(A). The Secretary of Labor has delegated the authority to review appeals under Section 806 and issue final agency decisions to the ARB. Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 75 Fed. Reg. 3924, 3924-25 (Jan. 25, 2010). In United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the Supreme Court recognized that “express congressional authorizations to engage in the process of ... adjudication that produces ... rulings for which deference is claimed,” is “a very good indicator of delegation meriting Chevron treatment. ...” Id. at 229, 121 S.Ct. 2164. The Court further explained that “[i]t is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure,” including formal adjudication. Id. at 230 & n. 12, 121 S.Ct. 2164. Applying Mead, the Ninth Circuit held that, the ARB’s interpretation of Section 806 warranted Chevron deference based on this statutory and administrative delegation. Welch v. Chao, 536 F.3d 269, 276 & n. 2 (4th Cir.2008). We agree and hold that the ARB’s interpretation of the “reasonable belief’ standard is entitled to Chevron deference.
The fact that the ARB reconsidered and abandoned the “definitive and specific” standard does not preclude our deference to the reasonable belief standard it subsequently announced in Sylvester. In National Cable & Telecommunications Ass’n v. Brand X Internet Services, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), the Court explained that “[ajgency inconsistency is not a basis for declining to analyze the agency’s interpretation under the Chevron framework.” Id. at 981, 125 S.Ct. 2688. The Court elaborated that “if the agency adequately explains the reasons for a reversal of policy, change is not invalidating, since the whole point of Chevron is to leave the discretion provided by the ambiguities of a statute with the implementing agency.” Id. (internal quotation marks omitted). Here, the ARB thoroughly explained why it reversed the course it previously set in Platone. See Sylvester, 2011 WL 2165854, at *14-15. Therefore, Chevron deference applies.
While agreeing that the definitive and specific standard should be jettisoned, ami-cus curiae National Whistleblower Center (“NWC”) contends that the objective belief standard established in Sylvester is too stringent. NWC argues that Section 806 protects an employee as long as he or she has a good faith belief in the existence of a violation. For support, NWC relies on our decision in Passaic Valley Sewerage Commissioners v. U.S. Department of Labor, 992 F.2d 474 (3d Cir.1993).
In Passaic Valley, we interpreted the whistleblower provision of the Clean Water Act, which protects employees who have “filed, instituted, or caused to be filed or instituted any proceeding under” the Clean Water Act. Id. at 478 (quoting 33 *132 U.S.C. § 1367(a)). At issue was whether the term “proceeding” included internal complaints. Id. at 475. We noted that, if the whistleblower provision was to accomplish the goals of the statute, then “employees must be free from threats to their job security in retaliation for their good faith assertions of corporate violations of the statute.” Id. at 478. Affording Chevron deference to the Secretary’s interpretation, we upheld his construction that “all good faith intracorporate allegations are fully protected from retaliation under” the Clean Water Act’s whistleblower provision. Id. at 480.
Because the legislative history of Section 806 references Passaic Valley in stating Congress’s intention “to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts,” S.Rep. No. 107-146, at 19 (2002), NWC contends that Congress intended to adopt Passaic Valley’s good faith belief test as the only standard to meet in bringing a claim under Section 806. We disagree. First, at issue in Passaic Valley was the meaning of the term “proceeding,” Passaic Valley, 992 F.2d at 478, not the phrase “reasonably believes.” As a result, its standard does not control the issue at hand. Second, a good faith belief goes to the employee’s subjective belief that a violation occurred, which is only one element of the reasonable belief standard applicable to Section 806. Therefore, whatever guidance Passaic Valley provides, it relates only to the subjective element of a reasonable belief test. As explained in Sylvester, the reasonable belief standard also includes an objective element. Sylvester, 2011 WL 2165854, at *11. As we did in Passaic Valley, and as explained above, we defer to the administering agency’s reasonable interpretation of the statute. As a result, an employee must establish not only a subjective, good faith belief that his or her employer violated a provision listed in SOX, but also that his or her belief was objectively reasonable. Id. at *11. A belief is objectively reasonable when a reasonable person with the same training and experience as the employee would believe that the conduct implicated in the employee’s communication could rise to the level of a violation of one of the enumerated provisions in Section 806. Id. at *11-12.
The Dissent contends that we have adopted an internally inconsistent test by recognizing that an employee must have an objectively reasonable belief of a violation of one of the listed federal laws but not a reasonable belief that each element of a listed anti-fraud law is satisfied. We perceive no inconsistency because we do not think Congress intended such a formalistic approach to the question of whether an employee has engaged in “protected activity.” As so aptly stated by our dissenting colleague, the purpose of “[wjhistleblower statutes like SOX § 806 [is] to protect people who ... stand against institutional pressures and say plainly, “what you are doing here is wrong’ ... in the particular way identified in the statute at issue.” (Dissenting Op. at 138.) By identifying conduct that falls within the ample bounds of the anti-fraud laws, an employee has done just that. That employee should not be unprotected from reprisal because she did not have access to information sufficient to form an objectively reasonable belief that there was an intent to defraud or the information communicated to her supervisor was material to a shareholder’s investment decision. “Congress chose statutory language which ensures that ‘an employee’s reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories [set forth in § 806] is protected.’ ” Van Asdale, 577 F.3d at 1001 (quoting Allen, 514 F.3d at 477). An *133 employee’s lack of knowledge of certain facts that pertain to an element of one of the anti-fraud laws would be relevant to, but not dispositive of, whether the employee did have an objectively reasonable belief that a listed anti-fraud law had been violated. Indeed, whether an employee has an objectively reasonable belief may not always be decided as a matter of law. See Allen, 514 F.3d at 477-78. Indeed, this issue would generally not be amenable to adjudication on the basis of the aver-ments of a complaint that concerns a communication that relates in an understandable way to one of the anti-fraud provisions listed in § 806.
In addition to rejecting the definitive and specific standard that the District Court relied upon in granting Tyco’s Motion to Dismiss, Sylvester conflicts with two additional legal conclusions reached by the District Court relating to protected activity under Section 806. First, in dismissing Wiest’s Complaint, the District Court concluded that an “employee’s communication must convey that his concern with any alleged misconduct is linked to ‘an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked loss.’ ” Wiest, 2011 WL 2923860, at *4 (quoting Day v. Staples, Inc., 555 F.3d 42, 56 (1st Cir.2009)). Sylvester expressly rejected such an interpretation. Observing that “[s]ome courts have misinterpreted [Platone’s ] analysis as a requirement that SOX complainants must allege elements of a securities fraud claim for protection,” the ARB reasoned that “requiring a complainant to prove or approximate the specific elements of a securities law violation contradicts the statute’s requirement that an employee have a reasonable belief of a violation of the enumerated statutes.” Sylvester, 2011 WL 2165854, at *18. The ARB further explained, “a complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation.” Id. We find this interpretation to be reasonable because there is nothing in the statutory text that suggests that a complainant’s communications must assert the elements of fraud in order to express a reasonable belief that his or her employer is violating a provision listed in Section 806. Therefore, the District Court erred by requiring that an employee’s communication reveal the elements of securities fraud, including intentional misrepresentation and materiality.
Second, the District Court concluded that to constitute protected activity, the information contained within an employee’s communication must implicate “a reasonable belief of an existing violation.” Wiest, 2011 WL 2923860, at *4 (emphasis added) (citing Livingston v. Wyeth, 520 F.3d 344, 352 (4th Cir.2008)). Sylvester rejected this requirement as well. The ARB held that Section 806 protects an employee’s communication about a violation that has not yet occurred “as long as the employee reasonably believes that the violation is likely to happen.” Sylvester, 2011 WL 2165854, at *13. We find this interpretation of the “reasonably believes” statutory phrase, 18 U.S.C. § 1514A(a)(1), to be reasonable given the statute’s purpose to combat corporate wrongdoing. See S.Rep. No. 107-146, at 5 (2002) (“Th[e] ‘corporate code of silence’ not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity.”). It would frustrate that purpose to require an employee, who knows that a violation is imminent, to wait for the actual violation to occur when an earlier report possibly could have prevented it.
*134 Contrary to our dissenting colleague’s assertion, we are not “ignoring] the need for a whistleblower’s employer to actually perceive that a whistle has been blown.” (Dissenting Op. at 139.) We agree with the Dissent that, in order for an employer to “know or suspect that the whistleblower-plaintiff is engaged in protected conduct ... the plaintiffs intra-corporate communications [must] relate in an understandable way to one of the stated provisions of federal law [in § 806].” (Id) But the whistleblower’s communication need not ring the bell on each element of one of the stated provisions of federal law to support an inference that the employer knew or suspected that the plaintiff was blowing the whistle on conduct that may fall within the ample reach of the anti-fraud laws listed in § 806. To hold that an employer could not have suspected that the plaintiff was engaged in protected activity because the communication did not recite facts showing an objectively reasonable belief in the satisfaction of each element of one of the listed anti-fraud provisions would eviscerate § 806. An employee may not have access to information necessary to form a judgment on certain elements of a generic fraud claim, such as scienter or materiality, and yet have knowledge of facts sufficient to alert the employer to fraudulent conduct. When an employee communicates these facts to a supervisor, the employer has a sufficient basis to suspect that the employee is protected against reprisal for communicating that information.
Moreover, whether an employee’s communication is indeed “protected activity” under § 806 is distinct from whether the employer had reason to suspect that the communication was protected. To show that the communication is protected, the employee must have both a subjective and an objective belief that the conduct that is the subject of the communication relates to an existing or prospective violation of one of the federal laws referenced in § 806. The communication itself need not reveal all the facts that would cause a reasonable person with the whistleblower’s training and background to conclude that a referenced federal law has been or will be violated. That determination should be based upon all the attendant circumstances, and not be limited to the facts conveyed by a whistleblower to the employer. If the communication itself had to convey facts sufficient to support an objectively reasonable belief of a violation of one of the referenced laws, Congress would not have imposed liability upon an employer who merely “suspected” that the communication is protected from reprisal.
In this case, the District Court did not decide this matter on the ground that Wiest’s pleadings failed to support a plausible inference that Tyco knew or suspected that Wiest had engaged in protected activity. Instead, the District Court decided that Wiest’s Complaint was inadequate because the communications did not “definitively and specifically” relate to a statute or rule listed in § 806 and failed to articulate facts that supported a reasonable belief of actionable fraudulent conduct directed at investors. Consistent with according Chevron deference to the ARB’s holding in Sylvester, we have found that the standards used by the District Court were too stringent. We now turn to Wiest’s Complaint to ascertain whether it states a § 806 claim for relief under the standard announced in Sylvester.
D. Application of Sylvester’s Reasonable Belief Standard
Although we hold that the District Court applied the wrong legal standard in analyzing Wiest’s claims under Section 806, dismissal is still appropriate if Wiest nevertheless failed to plead sufficient facts to *135 state a claim. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir.1999) (“We may affirm the district court on any ground supported by the record.”). “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” McTernan v. City of York, Pa., 577 F.3d 521, 530 (3d Cir.2009) (alteration omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted).
1. The Atlantis Resort Event
The Complaint alleges that Wiest refused to process a payment for and questioned the legitimacy of an extravagant event to be held at the Atlantis Resort. In particular, in a June 3, 2008 email to his supervisor, Wiest explained, among other concerns, that “[a]s submitted, the costs are charged entirely to advertising expense which seems inappropriate and does not address the issue of breaking out the meals and entertainment portions which we feel would fall into the 50% deductibility classification for tax purposes.” (App. 84, Ex. E.) The Complaint also alleges that Wiest, like many others, was aware of a similar event held during Kozlowski’s tenure. Wiest’s email to his supervisor expressed his concerns about Tyco treating the costs of the event as business expenses and his belief that certain costs should be treated as income for the guests. Because of his communication, a review of the expenses revealed that if Tyco had processed the transaction as originally submitted, it “would have resulted in a misstatement of accounting records and a fraudulent tax deduction.... ” (App. 43, ¶ 35.)
These facts are sufficient to support a plausible inference that Wiest reasonably believed that Tyco’s conduct would violate one of the provisions in Section 806 because he foresaw a potentially fraudulent tax deduction and misstatement of accounting records if he did not bring that information to the attention of his supervisors. Furthermore, Tyco’s decision to “gross-up” its employees’ income by compensating them for extra tax liabilities due to the Atlantis trip not being considered a business expense also plausibly created a reasonable belief in Wiest that a SOX violation would occur, given Wiest’s familiarity with Kozlowski having used the “grossing-up” method during the Tyco scandal.
We find that the alleged facts show not only that Wiest subjectively believed that Tyco’s conduct may have violated a provision listed in Section 806, but also support an inference that his belief was objectively reasonable. A reasonable person in Wi-est’s position who had seen the expense request for the extravagant Atlantis event could have believed that treating the Atlantis event as a business expense violated a provision of Section 806, especially given the scrutiny Tyco received during the Tyco International scandal under Kozlowski. We find, therefore, that Wiest pled sufficient facts to establish that his communication relating to the Atlantis event was protected activity under Section 806. As a result, we reverse the District Court’s dismissal Order with respect to Wiest’s communication relating to the Atlantis event.[5]
*136 2. The Venetian Resort Event
Wiest also alleges that he directed an expense request for an event at the Venetian Resort to be held while the tax department evaluated the business purpose of the event and until his department received proper documentation and accounting treatment. After receiving a revised agenda, the tax department eventually approved the event as a business expense. In an email chain attached to the Complaint relating to the Venetian event, the only reference to Wiest indicates that he asked his subordinate to forward a colleague additional information that Wiest’s department had received about the event. That particular email also reveals that although the accounts payable department requested additional review of the expenses, the department “believe[d] the information provided substantiates this [event] as a business expense.... ” (App. 114, Ex. M.)
Even if the facts in the Complaint established that Wiest subjectively believed the expense request for the Venetian event could have violated a provision in Section 806, we conclude that, objectively, a reasonable person in Wiest’s position would not have believed that the expense request that initially lacked a detailed agenda and breakdown of expenses would constitute a violation of one of the provisions listed in Section 806. Therefore, we affirm the District’s dismissal Order with respect to Wiest’s communications relating to the Venetian event.
3. The Wintergreen Resort Event
Regarding the $356,000 event that took place at the Wintergreen Resort, Wiest alleges that the initial invoice lacked sufficient documentation and accounting breakdowns. In addition, Wiest alleges that a planned attendee of the event had approved the request instead of Defendant Thomas Lynch, the CEO, as required by Tyco’s delegation of authority. Emails relating to the event show that Wiest twice indicated to management that Lynch needed to approve the request. In the first email, Wiest requested clarification from the CFO, Defendant Terrence Curtin, that he was approving the entire cost of the event and asked that Curtin copy Lynch on his response to communicate his approval. After Curtin apparently responded by giving his approval without copying Lynch, Wiest then emailed his supervisor reiterating that he still believed that Lynch should be informed about the matter because Curtin could only approve up to $100,000 for events. Curtin failed to copy Lynch,
The averments of the Complaint support an inference that Wiest subjectively believed that the lack of the CEO’s approval, which contravened internal control procedures, would violate one of the provisions enumerated in Section 806. Furthermore, it is plausible that a reasonable person in Wiest’s position could have believed that the event’s approval by an attendee of the event, who would therefore directly benefit from that approval, instead of by the CEO as required by internal control procedures, may have violated one *137 of the provisions contained in Section 806.[6] Therefore, we reverse the District Court’s dismissal Order with respect to Wiest’s communications relating to the Wintergreen event.
4. Other Matters
Wiest emailed management in 2007 about an employee who submitted improper expenses to inform management that if it wished to claim the expenses as business expenses then either Tyco would have to be reimbursed or the charges would have to be reported as income for the employee. The allegation and corresponding email show only that Wiest explained to management the potential tax consequences relating to the expenses. Without more, the Complaint lacks sufficient facts to establish that Wiest reasonably believed that Tyco’s handling of the matter constituted a violation of a law listed in Section 806.
In addition, Wiest alleges that he “raised questions” about proper accounting treatment of other events that occurred between late 2007 and September 2009, including a “lavish” holiday party, a team meeting that did not break out entertainment and meal expenses, and a baby shower for an employee. Aside from stating that it took several attempts to confirm that the baby shower would be treated as a business expense, Wiest fails to allege any facts suggesting that he reasonably believed these events violated an enumerated provision in Section 806. The Complaint does not specify anything about the nature or content of his communications. By itself, the allegation that Wiest “raised questions” does not create a plausible inference that he or any reasonable person in his position would believe that expenditures on the events rose to the level of a violation of a provision in Section 806. As a result, we affirm the District Court’s dismissal Order with respect to Wiest’s communications relating to the improper business expense claims of an individual employee as well as the holiday party, team meeting, and baby shower events.
III.
In sum, we hold that the reasonable belief test is the appropriate standard with which to analyze the communications that Wiest contends constitute “protected activity.” As explained in Sylvester, that standard requires that an employee’s communication reflect a subjective and objectively reasonable belief that his employer’s conduct constitutes a violation of an enumerated provision in Section 806. The District Court erred in dismissing Wiest’s Complaint by employing the “definitive and specific” standard, by interpreting Section 806 to require that an employee’s alleged “protected activity” reveal the elements of securities fraud, and by requiring that his or her communication reference an existing violation. We find that Wiest has pled adequate facts to show that his communications relating to the Atlantis and Wintergreen events were protected activity under Section 806. We agree with the District *138 Court, however, that Wiest cannot establish that his communications relating to the other alleged matters constituted protected activity.
For the foregoing reasons, we reverse the District Court’s Order denying Wiest’s Motion for Reconsideration. See McDowell v. Phila. Housing Auth., 423 F.3d 233, 238 (3d Cir.2005) (explaining that an errant conclusion of law may result in an abuse of discretion). We also reverse the District Court’s Order granting Tyco’s Motion to Dismiss as to Wiest’s communications relating to the Atlantis and Wintergreen events and affirm the dismissal as to Wiest’s communications relating to the other events.[7] We remand this matter to the District Court for further proceedings consistent with this opinion.

. The enumerated provisions are mail fraud, wire fraud, bank fraud, securities fraud, "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders...." 18 U.S.C. § 1514A.

. The District Court noted that the Motion for Reconsideration was untimely under Local Rule 7.1(g), but nonetheless decided the motion on the merits.

. In addition, we have also held more plainly that "[a] timely appeal from a denial of a Rule 59 motion to alter or amend ‘brings up the underlying judgment for review.’ " Fed. Kem-per Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir.1986) (quoting Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir.1982)).

. In decisions issued subsequent to Sylvester, the ARB has asserted that the definitely and specifically standard does in fact conflict with the language of Section 806. See Zinn v. Am. Commercial Lines, Inc., ARB No. 10-029, 2012 WL 1102507, at *4 n.33 (Dep’t of Labor March 28, 2012) ("[T]he 'definitive and specific' standard employed in prior ARB cases is inconsistent with the statutory language of Section 806.”); Prioleau v. Sikorsky Aircraft Corp., ARB No. 10-060, 2011 WL 6122422, at *6 n. 3 (Dep't of Labor Nov. 9, 2011) ("In Sylvester, we made clear that the "definitive and specific” standard that the ARB had employed in prior ARB cases ... was inconsistent with Section 806’s statutory language.”); Reamer v. Ford Motor Co., ARB No. 09-053, 2011 WL 3307575, at *3 n.3 (noting that the ARB "has criticized the use of ‘definitively and specifically' as a standard for an employee’s reasonable belief of a violation of the laws listed under Section 806.”); Inman v. Fannie Mae, ARB No. 08-060, 2011 WL 2614298, at *6 (Dep’t of Labor June 28, 2011) (finding error in the ALJ's use of the "definitive and specific” standard because it is inconsistent with the statutory language of Section 806); Mara v. Sempra Energy Trading, LLC, ARB No. 10-051, 2011 WL 2614345, at *7 (Dep't of Labor June 28, 2011) (same).

. The Dissent asserts that the accounting treatment of the Atlantis event does not suggest fraudulent conduct, characterizing the manner in which the event's expenses were originally to be treated as an "error” or "mistake.” (Dissenting Op. at 144-45 n.12.) That characterization ignores the fact that we are dealing solely with the allegations of a complaint, which must be viewed in the light most favorable to Wiest. See Phillips, 515 F.3d at 233 (holding that, in the wake of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts are still correct to "construe the complaint in the light *136 most favorable to the plaintiff, and [to] determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief” (internal quotation marks omitted)). In any event, the issue is not whether the contemplated accounting treatment was or was not part of a scheme to defraud. The issue is whether such accounting treatment could reasonably be believed by Wiest to be fraudulent. Given the Kozlowski scandal, a jury could find that Wiest reasonably believed that the sins of ¥■■-> 'owski were being repeated.

. The Dissent questions whether unauthorized expenditures for the Wintergreen Resort event could support a claim under one of the anti-fraud laws listed in § 806. Approval authorities exist to ensure that large expenditures are undertaken for appropriate business purposes. Expenditures for which required approvals have not been obtained raise the specter that they are not undertaken for an appropriate business purpose. Once again, such expenditures could plunder corporate assets for the benefit of those attending lavish events, masking personal income. We believe that the Complaint alleges sufficient facts to plausibly support an inference that Wiest had an objectively reasonable belief that the absence of the CEO’s authorization for the Wintergreen Resort Event was part of a fraudulent scheme.

. In light of the reinstatement of the SOX Section 806 claims, the District Court's decision to decline to exercise supplemental jurisdiction will be vacated.