NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 16-4075

————————————

JONI WESTAWSKI,
                              Appellant

v.

MERCK & CO., INC.

————————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-03239)
District Judge: Honorable Wendy Beetlestone

————————————

Submitted Under Third Circuit LAR 34.1(a)
April 23, 2018

Before: AMBRO, SCIRICA, and SILER, Jr.♦, Circuit Judges

(Opinion filed: June 27, 2018)

————————————

OPINION*

————————————

AMBRO, Circuit Judge

---

♦ Honorable Senior Judge Eugene E. Siler, Jr., Circuit Court Judge for the Sixth Circuit
Court of Appeals, sitting by designation.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellant Joni Westawski appeals the District Court's grant of summary judgment to Merck & Co., Inc. ("Merck") for her claim under Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A(a). Westawski was a Merck research analyst assigned to oversee a study of low-income Hispanic diabetics who successfully manage their disease. The study was completed for grocery store chain H-E-B and its health insurance benefits administrator, Blue Cross Blue Shield of Texas ("Blue Cross Texas"). Merck hired an outside market research firm, DrTango, Inc. ("DrTango"), as the researcher.

Westawski claims that Merck's relationship with Blue Cross Texas was historically strained, and DrTango was hired for the diabetes study because one of its scientists had close relationships with Blue Cross Texas executives. Westawski repeatedly complained to her supervisor and other managers about procedural irregularities concerning Merck's contracting with DrTango, including that her supervisor directed her not to conduct Merck's usual bidding process for the contract, Merck paid nearly double the standard amounts for DrTango's work, Merck broadened the study to collect potentially unnecessary data to meet its internal cost guidelines without reducing DrTango's fees, DrTango got several extensions to complete the study, and it received payment for presentations to H-E-B that were outside the scope of Merck's original contract. In response to Westawski's complaints, Merck conducted an investigation but found no violation of its internal policies.

2

After Westawski informed management that she could no longer work with her immediate supervisors, Merck transferred her to another department. It terminated her employment eight months later when it underwent a company-wide restructuring. Westawski argues she was terminated in retaliation for engaging in SOX-protected activity, as she claims she believed Merck sought to use the DrTango project fraudulently to gain access to executives at Blue Cross, Texas.

SOX Section 806 "protects whistleblowing employees from retaliation" by their employers, *Wiest v. Tyco Elecs. Corp. (Weist II)*, 812 F.3d 319, 328 (3d Cir. 2016), for "provid[ing] information [to their supervisors] . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders," 18 U.S.C. § 1514A(a)(1). For her anti-retaliation claim to survive summary judgment, Westawski "must identify evidence in the record from which a jury could deduce . . . [she] 'engaged in a protected activity'" under Section 806. *Weist II*, 812 F.3d at 329 (quoting 29 C.F.R. §§ 1980.104(e)(2)(i)-(iv), 1980.109(a)). An employee's activity is "protected" if she had "both a subjective and an objective belief that the conduct that is the subject of [her] communication relates to an existing or prospective violation of one of the federal laws referenced in § 806." *Wiest v. Lynch (Weist I)*, 710 F.3d 121, 134 (3d Cir. 2013).

Westawski conceded before the District Court that she has no claim rooted in bank or securities fraud, which leaves only mail, wire, or shareholder fraud as possible bases

for her claim. *Westawski v. Merck & Co.*, 215 F. Supp. 3d 412, 426 (E.D. Pa. 2016). The Court concluded that she failed to show she had engaged in "protected activity" because it was not objectively reasonable for a person of her training and experience to believe Merck had committed any of those three forms of fraud. *Id.* at 429-30.

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment *de novo, Wiest II*, 812 F.3d at 327, and can affirm on any basis supported by the record, *Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Merck's motion for summary judgment prevails if "there is no genuine issue as to any material fact," Fed. R. Civ. P. 56(c), and Westawski failed "to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

We agree that Westawksi failed to show she objectively believed Merck was committing one of Section 806's enumerated forms of fraud. She argues her belief need not be "objectively reasonable only within the strictly limited context of mail fraud, wire fraud, and shareholder fraud," and to require otherwise would contravene the whistleblower statute's broad purposes. P. Br. 23. This ignores both Section 806's plain text and our binding precedent in *Weist I*. Although a plaintiff is not required to show "a reasonable belief that each *element* of a listed anti-fraud law is satisfied," she must still "have an objectively reasonable belief of a violation of *one of the listed federal laws*." *Weist I*, 710 F.3d at 132 (emphases added).

4

Even assuming Merck selected DrTango and paid it a premium to conduct a study for H-E-B so Merck could improve its business relationship with Blue Cross Texas, Westawski fails to explain how that is fraud. As the District Court noted, she "identifies no prohibition on pharmaceutical companies networking with employers and health plan providers" like H-E-B and Blue Cross Texas, let alone a prohibition within the scope of mail fraud, wire fraud, or shareholder fraud. *Westawski*, 215 F. Supp. 3d at 427.

In an effort to satisfy her burden, Westawski vaguely asserts the payments to DrTango were some form of "bribe," "inducement," or "*quid pro quo*." P. Br. 34; P. Reply Br. 3. She claims she "had an objectively reasonable belief that there was a fraudulent scheme taking place." P. Br. 30. Without reference to any theory of fraud, and indeed citing no law at all, Westawski asserts that "anyone in the pharmaceutical industry . . . would understand that the buying of access to executives at a large managed care organization would be illegal." *Id.* at 37. This falls short of showing her complaints regarding the DrTango project "relate in an understandable way" to any of Section 806's enumerated forms of fraud. *Weist I*, 710 F.3d at 133.

We therefore affirm.