In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 12-2958

VICTORIA KATHREIN and
MICHAEL L. KATHREIN,

*Plaintiffs-Appellants,*

*v.*

CITY OF EVANSTON, ILLINOIS, et al,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:08-cv-00083 — **Ronald A. Guzman**, *Judge.*

---

ARGUED SEPTEMBER 10, 2013 — DECIDED MAY 15, 2014

---

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This appeal is the second occasion for our court to consider the suit by Michael and Victoria Kathrein against the City of Evanston, its mayor, and nine aldermen, pursuant to 42 U.S.C. § 1983. Originally, the district court dismissed the case for want of subject matter jurisdiction. A panel of this court then affirmed in part, reversed in part, and remanded for further proceedings. But in

light of an intervening decision of this court sitting *en banc*, the district court revisited the question of subject matter jurisdiction and dismissed the remaining claims for a second time. Because the decision of the *en banc* court did effect an intervening change in the law, we agree with the district court and now affirm. We also decline to revisit the part of the district court's original decision that we have already affirmed, despite the change in the law, because the Kathreins failed to preserve that issue for review.

I

The Kathreins first filed suit in January of 2008, claiming that Evanston's Affordable Housing Demolition Tax violates the Fifth and Fourteenth Amendments of the United States Constitution, as well as provisions of the Illinois Constitution and other state law. The facts leading to this lawsuit and the first appeal were described in this court's initial panel decision. *See Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 909–10 (7th Cir. 2011). To summarize, the Demolition Tax requires, with certain explicit exceptions, a property owner seeking to demolish any residential building to first pay the City $10,000 per building, or $3,000 per residential unit (whichever is greater). The ordinance establishing the tax states that the measure is designed to "provide a source of funding for the creation, maintenance, and improvement of safe and decent affordable housing in the City of Evanston." Evanston, Ill., Code § 4-18-1. It accomplishes this goal by directing the proceeds of the exaction to the city's Affordable Housing Fund, which helps low- and moderate-income residents find and keep affordable housing. *Id.* § 4-18-3(A). In the relevant time period, the law generated approximately $90,000 a year.

The Kathreins alleged that they owned a property containing a single-family house in Evanston in 2007, when a real estate investor and developer agreed to purchase the land for $225,000. But once the prospective buyer learned of the Demolition Tax, he lowered his bid to reflect the extra cost of razing the house. The sale fell through, and the Kathreins state that they have since dropped any plans to sell the property.

Instead, the Kathreins sued in federal court. Their case hit an obstacle, however, in the Tax Injunction Act (TIA), 28 U.S.C. § 1341, which forbids federal courts to "enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law," so long as there exists "a plain, speedy and efficient remedy" available in state court. The Kathreins therefore amended their complaint to add a new Count One, which alleged that the TIA is unconstitutional.[1] The district court nevertheless granted the defendants' motion to dismiss. The court held that the Demolition Tax was a tax, and that the Kathreins were attempting to interfere with its collection.[2] *Kathrein v. City of Evanston, Ill.*, No. 08 C 83, 2009 WL

---

[1] They did not, however, inform the Attorney General of their challenge to a federal statute, as required under Federal Rule of Civil Procedure 5.1.

[2] The district court also held that the Kathreins lacked standing to challenge the Demolition Tax, because they had never paid it and had no current intention of demolishing the house on their property. The court found that the doomed sale of the property was insufficient to establish that they had suffered any financial injury, and stated that any attempt to quantify the injury caused by the tax would rely on "speculation." 2009 WL 3055364, at *5–6. The original panel in this case reversed that holding and found that the Kathreins did have standing. 636 F.3d at 913–15. Because we now hold that the TIA bars this court from hearing the

3055364, at *4–5 (N.D. Ill. Sept. 18, 2009). As to the constitu-
tionality of the TIA itself, the district court held that the
Kathreins lacked standing to bring that claim, because the
Act barred them only from federal court, and did not stop
them from challenging the Demolition Tax in state court. *Id.*
at *5. Therefore, the court reasoned, the Kathreins could not
show that the TIA injured them.

A panel of this court reversed the district court's decision
in part. Employing a multi-factor analysis, the panel held
that the Demolition Tax was a regulatory device, not a tax
within the meaning of the TIA, because it provided an effec-
tive deterrent against the demolition of residential buildings,
and because it raised relatively little revenue. *Kathrein v. City
of Evanston, Ill.*, 636 F.3d 906, 912–13 (7th Cir. 2011). And with
the Demolition Tax no longer considered a tax, the TIA
posed no obstacle to the Kathreins' claims against it, and the
case could move forward. *Id.* at 916. But by the same token,
the Kathreins could not demonstrate that the TIA inflicted
any injury upon them. For that reason, the panel affirmed
the dismissal of the constitutional challenge to the TIA for
lack of standing. *Id.* at 913. The case was remanded to the
district court for further proceedings.

But before the district court could resolve the remaining
claims, this court issued its *en banc* ruling in *Empress Casino
Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722 (7th Cir.
2011). In that decision, the full court rejected the multi-factor
approach to identifying a tax taken by the panel in the first
appeal in this case, stating, "We do not agree with that deci-

---

challenge to the Demolition Tax, we will not revisit the panel's judgment
on that issue.

sion." *Id.* at 730. Instead, the court held that an "exaction[] designed to generate revenue" was a tax, contrasting such an exaction with fines "designed … to punish," and fees that "compensate for a service that the state provides to the person or firms on whom … the exaction falls." *Id.* at 728.

Upon learning of this court's *en banc* decision, the defendants again moved to dismiss the Kathreins' claims. Although the panel's earlier ruling that the Demolition Tax was not a tax was the law of the case, the defendants argued that *Empress Casino* effected an intervening change in the law that permitted the district court to depart from this court's earlier mandate. The Kathreins opposed the defendants' motion, arguing that the panel's decision was still good law after *Empress Casino* and that it still governed this litigation.

The district court agreed with the defendants. The court read the *Empress Casino* case to say that the full court "would conclude that the Demo[lition] Tax was a tax within the meaning of the TIA." *Kathrein v. City of Evanston*, Ill., No. 08 C 83, 2012 WL 3028331, at *2 (N.D. Ill. July 24, 2012). Although the *en banc* court did not "expressly overrule *Kathrein*" the district court concluded that it could not ignore "an opinion by the majority of the court stating that an earlier panel decision was wrong." *Id.* The Kathreins' remaining claims challenging the Demolition Tax were dismissed.

Notably, neither the district court nor the litigants discussed what should happen to Count One, the Kathreins' constitutional challenge to the TIA. To be sure, the district court had already dismissed that claim in its first decision, and the panel affirmed the dismissal, albeit on different grounds. But that was before *Empress Casino* unsettled the law of the case. If the TIA now bars the Kathreins' suit, why

were they still unable to show injury sufficient to establish Article III standing? This question was left unanswered, because it went unasked.

In the instant appeal, the Kathreins restate their arguments that the original panel decision still governs this case even after *Empress Casino*. But they also argue in the alternative that, if the Demolition Tax is now to be considered a tax, they should be allowed to press forward with the constitutional challenge to the TIA in the district court.

## II

We review a district court's dismissal for want of subject matter jurisdiction, whether due to the TIA or a lack of standing, *de novo*. *Hager v. City of W. Peoria*, 84 F.3d 865, 868 (7th Cir. 1996); *Doe v. Cnty. of Montgomery, Ill.*, 41 F.3d 1156, 1158 (7th Cir. 1994). We accept all well pleaded allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Hager*, 84 F.3d at 868–69; *Doe*, 41 F.3d at 1158. This appeal turns on the legal interpretation of the *Empress Casino* decision, and not on any disputed factual findings of the district court.

### A. Law of the Case

The Kathreins understandably maintain that our original determination that the Demolition Tax was a regulatory device is now the law of the case. According to the law of the case doctrine, "a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it." *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004). Indeed, by finding the Demolition Tax was a tax, the district court effectively reentered a judgment that we had reversed on appeal. "The most elementary applica-

tion of [law of the case] doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court." *Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir. 1997) (internal quotation marks omitted).

However, the law of the case doctrine is not "hard and fast," and we find that the district court had ample "good reason" to depart from it in this instance. *Tice*, 373 F.3d at 853–54. In general, the "unusual circumstances" that justify abandonment of the law of the case "include (1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Chi. & N.W. Transp. Co. v. United States*, 574 F.2d 926, 930 (7th Cir. 1978). The second item in that list is an example of a generally accepted occasion for disturbing settled decisions in a case: when there has been an intervening change in the law underlying the decision. *See United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993) (Law of the case doctrine permits "a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim.").[3]

---

[3] Moreover, even if we were to disagree with the district court's view that the underlying law has changed, we would nevertheless permit it to reexamine an already settled legal issue if it "reasonably concluded that there has been a relevant change in the law." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). If the district court had made a reasonable error, we would be free to review that issue on appeal without being constrained by the law of the case. *Id.*

Although the intervening decision here came not from
the Supreme Court, but from this very court sitting *en banc*,
we have little trouble concluding that it worked a change in
the law. *Empress Casino* did not explicitly overrule the panel's
decision in this case, but it did clearly alter the law underly-
ing the decision. "When sitting *en banc*, the full court has the
power to change general rules stated in previous cases." *Mo-
jica v. Gannett Co.*, 7 F.3d 552, 557 (7th Cir. 1993). This court in
*Empress Casino* changed the general understanding of what a
tax is for purposes of the TIA. Its holding is flatly "incon-
sistent" with the prior decision of the *Kathrein* panel, *Chi. &
N.W. Transp. Co.*, 574 F.2d at 930, and the opinion for the
court said as much. *See Empress Casino*, 651 F.3d at 730 ("We
do not agree with that decision."). The *en banc* majority also
criticized "a number of decisions under the [TIA]" that
"have flirted with open ended, multifactor tests—open-
ended because the relative weights of the factors are left to
judicial discretion." *Id.* at 727. The *Kathrein* panel decision
employed just such a multifactor test in evaluating the Dem-
olition Tax. Based on our reading of *Empress Casino*, we con-
clude that the district court correctly departed from the law
of the case in this instance. Reasonable minds can disagree
about the proper boundary between a tax and other exac-
tions in applying the TIA, but the bright-line test announced
in *Empress Casino* is binding on all courts in this circuit going
forward.

The Kathreins respond by noting, as did the dissent in
*Empress Casino*, that the *en banc* decision confronted a private
racketeering suit rather than the Section 1983 "public law"
suit presented in this case. They contend that *Empress Casino*
could not overrule the prior panel decision in this case be-
cause the two decisions did not involve the same legal issue.

However, in both cases the decision rested on whether the disputed exaction was a tax, and, as a result, whether the TIA applied. Thus, the announcement of a new legal rule in *Empress Casino* necessarily disturbed the law set out in the earlier, inconsistent panel decision.

### B.   The Demolition Tax

The next question is whether, under the new *Empress Casino* standard, the Demolition Tax is a tax. It clearly is. First, in disagreeing with the panel's original decision in *Kathrein*, the *en banc* majority indicated that the Demolition Tax, as described by the panel decision, was a tax. "The tax would deter demolitions and the modest fund generated by it … would be used to subsidize those poor people" who were in danger of losing their homes. *Id.* at 730. The *Empress Casino* majority concluded that "[t]axes that seek both to deter and to collect revenue when deterrence fails … are commonplace," and that the Evanston ordinance was an example of a "sin tax." *Id.*

Even had the *en banc* court not already explicitly categorized the Demolition Tax, we would still hold that the new rule squarely describes the exaction here as a tax. The *Empress Casino* decision divided exactions into three categories: fines, fees, and taxes. It noted that a fine is "designed … to punish," and that fees "compensate for a service that the state provides to the person or firms on whom … the exaction falls." *Id.* at 728. The Demolition Tax is not designed to punish property owners for demolishing buildings, nor was it enacted with "the hope … that the punishment [would] deter" its citizens from tearing down houses and essentially cease all demolition of residential buildings. *Id.* The practice of demolishing residences is not "completely forbidden." *Id.*

at 729. The City of Evanston obviously expects and hopes that houses requiring demolition will continue to be torn down in the future, albeit perhaps at a slower rate. Nor is the ordinance a fee. It does not compensate for a state-provided service offered to homeowners who demolish a residential unit. Paying the tax gives the owner permission to demolish a structure, but a grant of permission is not a service. In fact, the exaction applies to those who perform the demolitions themselves, without utilizing any of the City's resources. The ordinance therefore imposes a tax.

The Kathreins respond that the ordinance does not impose a tax because the property owner can be exempt from paying—for instance, one who has owned and occupied a residence for three years, and who, following the demolition of that residence, lives in the new dwelling for three years following the demolition. *See* Evanston, Ill., Code § 4-18-4(A), D(1). However, tax laws commonly carve out exemptions. *See, e.g.*, 26 U.S.C. §§ 151, 501(c)(3). The existence of exemptions has no bearing on the bright-line rule announced in *Empress Casino*. The Kathreins also note that revenue for the tax is directed toward a separate fund rather than the general treasury. But that, too, is a distinction without a difference. The court in *Empress Casino* observed that a tax "earmarked for a particular purpose is hardly unusual" and dealt with just such a tax in that case. *Empress Casino*, 651 F.3d at 731.

The purposes of the exaction in this case, as the *en banc* court observed, are 1) to slow the rate of demolitions through a financial disincentive, and 2) to use the revenue from the demolitions to support poor homeowners. This du-

al motive clearly places the exaction in the category of a tax under *Empress Casino*'s bright-line test.

## C.  Application of the TIA

Because the Demolition Tax is properly considered a tax, the TIA bars the Kathreins' challenge to the exaction.[4] The TIA is the state-tax analogue to the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a), which bars suits designed to enjoin the collection of federal taxes. It furthers a healthy respect for federalism by preventing federal courts from interfering with the vital state function of collecting taxes. Admittedly, the text of the Act refers only to efforts "to enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law," whereas the Kathreins seek damages. 28 U.S.C. § 1341. But the Supreme Court, invoking the principal of comity, has interpreted the prohibition announced in the statute to bar all Section 1983 suits directly contesting the validity of state tax schemes. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) ("[T]axpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts."). The Court reasoned that "damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim." *Id.* at 115. The Court's ruling in *McNary* dooms the Kathreins' challenge, and the district court correctly dismissed those remaining claims. *See Em-*

[4] The Kathreins effectively concede that Illinois courts provide a "plain, speedy, and effective remedy" for their state and constitutional claims against the Demolition Tax, so that statutory requirement is easily met. *See* App. Br. at 10 ("Plaintiffs admit they can object to the constitutionality of defendants' municipal ordinance in state court.").

*press Casino*, 651 F.3d at 725 ("[T]he duty of federal courts to cede litigation seeking to enjoin state tax statutes to the state courts (a 'duty of comity'—that is, of respect for another sovereign) extends beyond the limits of the Tax Injunction Act.").

### D. The Constitutional Claim ("Count One")

The final question is what to do about the Kathreins' contention that the TIA is unconstitutional. The district court originally dismissed this count of the Kathreins' complaint, and the panel affirmed that aspect of the decision on the ground that the Kathreins lacked standing to challenge the TIA because the Demolition Tax was not a tax. As we have explained, the principle upon which the affirmance rested is no longer good law. The Kathreins therefore request that they be allowed to press forward in the district court with their constitutional claim.

Unfortunately, the Kathreins never moved for reconsideration of Count One before the district court. Unlike their other claims, which were still live following remand and thus susceptible to the defendants' renewed motion to dismiss, Count One was dismissed in a final judgment of the district court. This court affirmed the dismissal order on different grounds, and its mandate issued. *See Freeman v. Chandler*, 645 F.3d 863, 870 (7th Cir. 2011) (The court of appeals "may affirm on any grounds present in the record."). The claim was therefore no longer part of the case, and the district court could not revisit it *sua sponte*. *See United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995) ("The mandate rule requires a lower court to adhere to the commands of a higher court on remand."). As a result, Count One is not before

this court, and there is no decision of the district court to re-view regarding that claim.

If the Kathreins had wished for the district court to re-consider the dismissal following the mandate, they should have moved for relief from the final judgment pursuant to Federal Rule of Civil Procedure 60(b).[5] *See LSLJ P'ship v. Frito-Lay, Inc.*, 920 F.2d 476, 478 (7th Cir 1990) ("[A] district court has jurisdiction to address a change in law [pursuant to Rule 60(b)] without flouting the mandate of the appellate court.") (quotation marks omitted). The Kathreins did not do so. At oral argument in this appeal, the Kathreins conceded that they had considered Count One to be closed following the remand. It does not matter that the defendants, in their motion, also remained silent as to what effect *Empress Casino* might have on the Kathreins' constitutional challenge. That claim had been dismissed from the case by a final judgment, and absent a Rule 60(b) motion the defendants had no rea-son to think it would revive. It is important both for litigants and the judicial system that claims already decided remain that way, barring an appropriate motion for reconsideration or to set aside the judgment. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) ("[T]he need for the finality of judgments is an overarching con-cern.").

Instead of filing an appropriate motion to reconsider, the Kathreins, in their responses to the post-*Empress Casino* mo-tion to dismiss before the district court, argued exclusively

---

[5] The Kathreins also did not file a motion to amend the judgment under Rule 59(e) within the required 28-day window, so any such motion now would be untimely.

that this court's earlier panel ruling was binding law of the case. In other words, they maintained that, for purposes of this litigation, the Demolition Tax should not be considered a tax and the TIA should not apply. The Kathreins also responded with a separate motion to refile Count Two of their amended complaint—a takings claim that had been dismissed by stipulation and without prejudice. Crucially, they did not file any such motion regarding Count One. This was a purposeful strategic choice; as a result, the Kathreins have waived any argument made on appeal that the Evanston ordinance does impose a tax, and that they have standing to challenge the TIA.[6] "[A] party who fails to adequately present an issue to the district court has waived the issue for purposes of appeal." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). "It is not the district court's job to flesh out every single argument not clearly made." *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013). By the same token, it is also not the district court's responsibility to craft arguments in the alternative for the parties. The Kathreins decided to place all their eggs in the law of the case basket, and they had no ground to complain when that strategy backfired. Even if we were inclined to interpret the Kathreins' responses to the defendants' motion to dismiss as

---

[6] Although the Kathreins filed this suit *pro se* and litigated the instant appeal themselves, Victoria Kathrein was represented by counsel following the remand to the district court, and counsel filed both the motion to refile Count II and a response to the motion to dismiss following *Empress Casino*. Victoria Kathrein therefore cannot be excused from her failure to argue the constitutional claim because of her *pro se* status. And as to Michael Kathrein, *pro se* litigants "are in general subject to the same waiver rules that apply to parties who are represented by counsel." *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995).

a Rule 60(b) motion—and we are not—any argument regarding the constitutionality of the TIA has been waived.[7]

The Kathreins argue that they should have the opportunity to relitigate the dispute over the constitutionality of the TIA, despite their failure to move for relief from final judgment, because the ruling that the Evanston ordinance levies a tax, by logical necessity, grants them standing to challenge the TIA. According to this contention, the district court's second ruling automatically, or "by default," resurrected the constitutional claim. This argument is unavailing, for at least three reasons.

First, Rule 60(b) requires a party to file a motion to disturb a final judgment, and it restricts the time in which a party may do so. A motion for relief from a judgment on any ground included in Rule 60(b)(1)–(3) must be made "no more than a year after the entry of judgment." Fed. R. Civ. P. 60(c)(1). The district court's original decision in this case came in 2009, so any such Rule 60(b) motion would now be untimely, even if the Kathreins had some colorable claim under those provisions. Likewise, any other Rule 60(b) motion must be made "within a reasonable time." *Id.* The Kathreins have not moved to set aside the district court's judgment even now, long after the defendants put them on notice that *Empress Casino* worked an intervening change in the law. This delay is unreasonable. Therefore, the Kathreins

---

[7] Procedural infirmities aside, the Kathreins' attack on the TIA's constitutionality was not promising. *See Gass v. Cnty. of Allegheny, Pa.*, 371 F.3d 134, 141 (3d Cir. 2004) (rejecting a constitutional challenge to the TIA as "baseless"). But we do not reach the merits of the claim here.

have missed their chance to seek relief from the district court's final judgment.

Second, the Kathreins have failed to show the district court that they have standing to pursue their constitutional claim. The district court's initial decision did, like the *en banc* court, correctly view the Demolition Tax as a tax. It nevertheless dismissed the Kathreins' constitutional challenge for lack of standing. The court reasoned that "[t]hough the TIA bars federal courts from adjudicating state tax challenges, it leaves plaintiffs' state-court remedies intact." 2009 WL 3055364, at *5. In its judgment, the Kathreins could not show that the TIA injured them—they were still capable of securing relief in the state courts. We do not express any opinion here as to whether this standing decision was correct, but suffice it to say that "[t]he plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing." *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing" standing.). *Empress Casino* clearly endorsed the district court's view that the Evanston exaction was a tax, but it said nothing to indicate that the district court's initial decision dismissing their constitutional claim was wrong. Without a Rule 60(b) motion, the district court had no reason to revisit its judgment that the Kathreins lacked standing to make their constitutional challenge, even if the TIA barred their claims against the exaction in federal court.

The third and final reason a motion was necessary is that Rule 60(b) requires more than a showing that the district court's earlier decision has been undermined by intervening

law. "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Cincinnati Ins. Co.*, 131 F.3d at 628. The Kathreins failed to show exceptional circumstances, and the reasons to reconsider the district court's ruling were not self-evident, even after *Empress Casino. See McKnight v. U.S. Steel Corp.*, 726 F.2d 333, 336 (7th Cir. 1984) ("[A] change in the applicable law after entry of judgment does not, by itself, justify relief under [Rule] 60(b)."); *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."). By foregoing the Rule 60(b) motion to argue exclusively for maintaining the law of the case, the Kathreins failed to preserve any opportunity to demonstrate exceptional circumstances. The portion of the district court's decision that the original panel affirmed still binds the parties.

## III

This case presents the rare instance in which an *en banc* decision creates an intervening change in the law that permits the district court to deviate from the law of the case. The defendants realized that the law had changed and properly moved for relief pursuant to the new legal rule. The Kathreins did not, so they must live with the consequences.

The decision of the district court is AFFIRMED.