**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4168
_____

Z&R CAB, LLC,
ZORO, INC.,
                              Appellants

v.

PHILADELPHIA PARKING AUTHORITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(E.D. Pa. No. 2-13-cv-06173)
District Judge: Honorable Stewart Dalzell
_____

Argued on April 8, 2015

Before: AMBRO, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: May 28, 2015)
_____

OPINION[*]
_____

John K. Weston, Esq.          [ARGUED]
Edward W. Millstein, Esq.
Sacks, Weston, Petrelli, Diamond & Millstein
Suite 1600
1845 Walnut Street
Philadelphia, PA 19103
          *Counsel for Appellants*

_____

          [*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Patrick J. Doran, Esq.        [ARGUED]
Gary D. Fry, Esq.
Archer & Greiner
1650 Market Street
One Liberty Place, 32nd Floor
Philadelphia, PA 19103
        *Counsel for Appellee*

SHWARTZ, Circuit Judge.

In 2013, a Pennsylvania court held that the statute authorizing the Philadelphia Parking Authority ("PPA") to charge taxicab operators an annual fee violated, among other things, due process. Two Philadelphia taxicab companies, Z&R Cab, LLC and Zoro, Inc. (collectively, the "Cab Companies"), thereafter filed suit in the District Court under 42 U.S.C. § 1983 seeking a full refund of the fees they had paid. The District Court dismissed their case for lack of jurisdiction. We conclude that the District Court had jurisdiction. Thus, we will vacate the dismissal order and remand.

I

In 2004, Pennsylvania's General Assembly amended the Parking Authority Law ("PAL"), transferring regulatory responsibility for certain taxicab and limousine operators in Philadelphia to the PPA. The PAL funded the PPA's regulatory activities with fees operators paid, 53 Pa. Cons. Stat. Ann. § 5708(b),[1] and provided that the PPA would annually submit a proposed fee schedule to the General Assembly, which would become effective if the legislature did not disapprove it, id. § 5707(b). The PAL also subjected operators to fines, vehicle impoundment, and revocation of their operating licenses for unpaid fees.

---

[1] References to the PAL are to the version in effect from 2004 to 2013.

In 2012, several taxicab operators refused to pay the fees, were cited by the PPA, and challenged the constitutionality of the PAL in state court. In an opinion summarily affirmed by the Pennsylvania Supreme Court, the Commonwealth Court declared the law "unconstitutional and unenforceable" because, among other things, it did not permit taxicab operators to challenge the fees and imposed penalties for non-payment, and thus "confer[red] autocratic power upon the [PPA] to condemn property without due process" in violation of the Pennsylvania and United States Constitutions. MCT Transp., Inc. v. Phila. Parking Auth., 60 A.3d 899, 919-920 (Pa. Commw. Ct. 2013) ("MCT").[2]

Soon after the Commonwealth Court's decision, the Cab Companies filed this putative class-action complaint on behalf of those entities that "paid to . . . the [PPA] fees assessed by the authority of [the PAL]" from 2004 through February 14, 2013, App. 41, seeking a refund of "all sums paid to . . . [the PPA] under authority of [the PAL]," plus interest, App. 43.[3] The PPA moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that the Cab Companies are not entitled to refunds because MCT does not apply retroactively under Pennsylvania law. The District Court disagreed and concluded that MCT applies retroactively, but held that "the question of appropriate

---

[2] The General Assembly amended the PAL after the Commonwealth Court's decision. See 53 Pa. Cons. Stat. Ann. §§ 5707 et seq. in Omnibus Amendments Act of July 9, 2013, P.L. 455, No. 64. The law now requires that the PPA give taxicab and limousine operators notice of the fees to be assessed, a fifteen-day period in which to contest them, and a hearing. See id.

[3] The Cab Companies also sought equitable relief, which was dismissed.

3

remedy" is "entrusted to the Pennsylvania state courts," App. 19, and dismissed the complaint for lack of subject matter jurisdiction.[4]

The Cab Companies moved for reconsideration of the dismissal order.[5] The District Court denied the motion, reiterating that any remedy to be afforded the Cab Companies "lies exclusively in the hands of the state courts." App. 35. As a result, the District Court reasoned that there was "no case or controversy" for it to adjudicate, so it lacked subject matter jurisdiction to either entertain or abstain from deciding this case. App. 31. The Cab Companies appeal, arguing that the District Court has jurisdiction over their complaint. For its part, the PPA asserts that principles of comity require the federal court to refrain from deciding this case.

## II[6]

### A

We first address the District Court's conclusion that it lacked subject matter jurisdiction over the Cab Companies' refund claim.[7] The Cab Companies seek

---

[4] Less than one week after the District Court's dismissal, the Cab Companies filed an identical complaint in Pennsylvania state court under § 1983, seeking a full refund. This proceeding is ongoing.

[5] The Cab Companies fully briefed their position concerning jurisdiction and abstention before the District Court in connection with the motion for reconsideration and thus were not prejudiced by the District Court's initial sua sponte jurisdcitional ruling.

[6] Neither party challenges MCT's holding that the PAL violated federal due process or the District Court's holding that MCT applies retroactively, and thus these issues are not before us.

[7] We have jurisdiction under 28 U.S.C. § 1291. When reviewing a district court's "order dismissing a claim for lack of subject matter jurisdiction, we exercise plenary review over legal conclusions and review findings of fact for clear error." White-Squire v. U. S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). Likewise, when "a district court predicates its denial of reconsideration on an issue of law, our review is plenary, and

4

compensation for a federal due process violation under § 1983. Because this claim arises under the United States Constitution and federal law, 28 U.S.C. § 1331 grants the District Court subject matter jurisdiction. Notwithstanding this statutory authority, the District Court concluded, citing <u>McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida</u>, 496 U.S. 18 (1990), and <u>Harper v. Virginia Department of Taxation</u>, 509 U.S. 86 (1993), that it lacked subject matter jurisdiction because the Pennsylvania courts enjoy "exclusive[]" authority to determine the appropriate remedy due the Cab Companies, and thus the Cab Companies' refund claim presents no federal "case" or "controversy." <u>See</u> App. 34-36.

While in <u>McKesson</u> and <u>Harper</u> the Supreme Court left to state courts the task of fashioning an appropriate remedy for plaintiffs subjected to unconstitutional state tax laws, neither case barred a federal court from doing so. Indeed, in both cases, which involved direct appeals from state courts, the Supreme Court declined to order a specific remedy and remanded the issue to the state courts out of respect for the state's "role in shaping the contours of . . . relief" in this context. <u>McKesson</u>, 496 U.S. at 50; <u>see also</u> <u>Harper</u>, 509 U.S. at 101-02 (leaving to Virginia courts "the crafting of any appropriate remedy"). The Court did not categorically bar federal courts from providing such relief, and in fact acknowledged that it granted such relief in other cases. <u>See</u> <u>id.</u> at 33-36 (noting that in <u>Ward v. Love County Board of Commissioners</u>, 253 U.S. 17, 24 (1920),

_____

when it bases its denial on an issue of fact, we review for clear error." <u>Wiest v. Lynch</u>, 710 F.3d 121, 128 (3d Cir. 2013). Otherwise, we review the denial of a motion for reconsideration for abuse of discretion. <u>Id.</u>

5

the Court ordered a remedy for an unconstitutional state tax law).  Accordingly, the

District Court erred in concluding that it lacked subject matter jurisdiction.

B

McKesson and Harper, as well as more recent cases such as Levin v. Commerce

Energy, Inc., 560 U.S. 413 (2010), and Direct Marketing Association v. Brohl, ___ U.S.

___, ___, 135 S.Ct. 1124, 1134 (2015), do teach, however, that under principles of

comity, deference should be given to state courts to remedy constitutional violations

arising from state revenue-raising laws if adequate state remedies exist.

While the Levin Court indicated that "[c]omity's constraint has particular force

when lower federal courts are asked to pass on the constitutionality of state taxation of

commercial activity," id. at 422, in discussing its preference for permitting states to

fashion an appropriate remedy for challenges to state fiscal laws, it also referenced

"economic legislation," "tax classifications or other legislative prescriptions," and "a

[s]tate's allocation of benefits or burdens," id. at 426-27, suggesting that this type of

comity applies outside of tax cases.  This is consistent with the Supreme Court's

expressed "respect for state functions," id. at 421, and "reluctance  . . . to interfere with

the [state's] fiscal operations."  Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S.

293, 298 (1943).

In light of this language, and the fact that the state court has already ruled on the

constitutionality of the PAL, which governed a commercial activity in a single city, Levin

suggests that a federal court may wish to carefully weigh whether to intervene.  Levin,

560 U.S. at 425-32 & n. 11 (internal quotation marks and citations omitted); see also

6

Direct Marketing 135 S. Ct. at 1132 (comity may cause a court to refrain from deciding a case that involves the fiscal operations of state government).  Because the District Court concluded it lacked jurisdiction and thus did not address whether it should refrain from adjudicating this case under this doctrine, we will remand to allow it to decide, among other things, whether comity should be invoked in this case seeking a monetary remedy for the imposition of unconstitutional state fees.[8]

### III

For the foregoing reasons, because the District Court had subject matter jurisdiction over the Cab Companies' refund claim, we will vacate the dismissal order and remand for the District Court to consider, among other things, whether it should refrain from adjudicating this case under principles of comity.

---

[8] The Levin Court identified several factors a federal court might weigh in deciding whether to refrain, based upon comity, from deciding such a case, namely whether: (1) the challenged law concerned "commercial matters over which" the state "enjoys wide regulatory latitude"; (2) the suit requires adjudicating "any fundamental right or classification" to which heightened scrutiny applies; (3) the state courts are "better positioned than their federal counterparts to correct any violation" and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect.  Levin, 560 U.S. at 431-32.  We leave consideration of these factors, the unique facts of this case, and the applicable case law to the discretion of the District Court.  See Remington Rand Corp. Del. v. Bus. Sys. Inc., 830 F.2d 1260, 1266 (3d Cir. 1987).

7

AMBRO, Circuit Judge, concurring in part and concurring in the judgment

I join my colleagues in their holding that subject matter exists. I also agree that if PPA on remand moves to dismiss on the grounds of comity and the District Court deems that argument not waived and meritorious, we would review its decision for abuse of discretion. I write separately, however, to explain why dismissing for comity concerns would be, in my view, an error of law and therefore an abuse of discretion. Thus I concur in the judgment and join all but Part II.B of the majority opinion.

Several Supreme Court cases address the comity doctrine. Read together, they stand for the propositions that: (1) the doctrine is not jurisdictional, meaning that a state must request its application or it will be deemed waived; and (2) federal courts should abstain from hearing lawsuits when (a) an adequate state remedy exists, (b) the plaintiff challenges a state tax law, and (c) the state may choose among more than one constitutionally permissible remedy. The first proposition is beyond debate. *See Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1134 (2015) ("[T]he comity doctrine is nonjurisdictional."). Similarly the requirement in the second proposition of an adequate state remedy is clear and is not at issue here, as the plaintiffs may repair to Pennsylvania courts. *See Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 587 (1995) (requiring adequate state remedy); *Howlett v. Rose*, 496 U.S. 356, 367 (1990) ("Federal law is enforceable in state courts . . . because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature.").

The remaining conditions are related. Historically, the comity doctrine has been applied only to tax cases; the justification for declining to extend it to other contexts,

1

particularly to suits that challenge regulatory fees, is that states have a great deal of flexibility in remedying unconstitutional taxes. This range of remedial options (whether to extend a benefit to an unconstitutionally burdened party, whether to burden an unconstitutionally benefitted party, or some combination) implicates sensitive questions of state policy, and the Constitution has no preference among the possible outcomes. However, in many constitutional challenges to state laws or policies, only one remedy, or a suite of possible remedies no more varied than in any typical lawsuit, will satisfy the Constitution. The comity doctrine is unsuited to cases—such as this one—where state legislative prerogatives are not at stake.

Before describing the comity doctrine in some detail to illustrate why I believe applying it to this case would be a mistake, I stress that only one remedy is possible here: damages. The case before us concerns a procedural due process violation (I presume that the Cab Companies will be able to preclude the Commonwealth from arguing that the challenged regulatory scheme satisfied the Constitution's requirements). Although procedural due process is a flexible standard, the remedies for violations of it are straightforward: equitable relief where appropriate (the Cab Companies concede their request for such relief is moot), and damages if plaintiffs can prove, consistent with ordinary tort principles, that they in fact suffered compensable injuries. *Carey v. Piphus*, 435 U.S. 247, 259–64 (1978). There is no similarly situated party Pennsylvania could choose to burden to remedy the due process violation at issue here, but if the Cab Companies lost money specifically because they lacked an opportunity to challenge the rates the PPA set, they can recover that amount of money. *Id.* The extent of the damages

2

is open to debate; the Cab Companies demand all the fees paid to the PPA over a decade, but it is not clear from the record before us that they will be entitled to nearly that amount of money. The causal relationship between the due process violation and the amount the Cab Companies paid has yet to be established, and I note that any recovery may be affected by Pennsylvania's two-year statute of limitations for § 1983 actions. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

Whatever sum may be appropriate to cover the Cab Companies' injury, the calculation of damages does not depend on the answer to any sensitive questions of state policy. And, as I suggest in greater detail below, "[b]ecause state courts would have no greater leeway than federal courts to cure the alleged violation, nothing would be lost in the currency of comity or state autonomy by permitting the . . . suit to proceed in a federal forum." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 431 (2010).

## I.   The Comity Doctrine Has Only Been Applied to Challenges to Taxes as Unconstitutionally Discriminatory.

The Supreme Court has discussed the comity doctrine exclusively in the context of challenges to state tax laws. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981); *Nat'l Private Truck Council*, 515 U.S. 582; *Hibbs v. Winn*, 542 U.S. 88 (2004); *Levin*, 560 U.S. 413; *Direct Mktg. Ass'n*, 135 S. Ct. 1124. In each of these cases, comity barred the suit where a plaintiff challenged a tax as violating a constitutional guarantee of equal treatment: *McNary* was an equal protection challenge to an allegedly irrational discrimination between non-suspect classes of property owners; *National Private Truck Council* and *Direct Marketing* were both dormant Commerce Clause cases

3

whereby out-of-state private parties accused states of favoring in-state taxpayers in violation of the Constitution's vesting in Congress the power to regulate interstate commerce; and the plaintiff in *Levin* challenged a state tax under both the Equal Protection and dormant Commerce Clauses. Under both these Clauses (as well as the intergovernmental tax immunity doctrine, which prohibits one sovereign from discriminating against subjects of another sovereign in taxation, *see Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 814 (1989)), an unconstitutional state tax scheme may be remedied either by burdening an unconstitutionally benefitted party, by benefitting an unconstitutionally burdened party, or by some combination of the two. *Hibbs*, the only recent Supreme Court case to hold that comity did not bar a tax suit, concerned an alleged Establishment Clause violation, and the only available remedy was annulling the challenged tax credit. *Levin*, 560 U.S. at 431 (2010).

The comity doctrine got its start in *McNary*, when the Supreme Court was faced with a conflict between a line of cases under § 1983 holding "that a litigant challenging the constitutionality of any state action may proceed directly to federal court," 455 U.S. at 102, and another line where "the comity principle . . . bars at least federal injunctive challenges to state tax laws," *id. McNary* modestly extended the comity principle to bar suits seeking damages in challenges to state tax laws that violate a principle of equal treatment. The Court based its holding on how "disruptive of Missouri's tax system" it would be to allow the suit to proceed, *id.* at 113–15, and it held explicitly "that *taxpayers* are barred by the principle of comity from asserting § 1983 actions against the validity of state *tax* systems in federal courts," *id.* at 116 (emphases added). Lest there be any doubt

4

that *McNary* was a tax case, its author, Chief Justice Rehnquist, wrote of the case, "Our decision that such suits must be brought in state court was driven by the *unique and sensitive interests at stake* when federal courts confront claims that States acted impermissibly in administering their own *tax* systems." *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 350 (2005) (Rehnquist, C.J., concurring in the judgment) (emphases added).

*National Private Truck Council* again considered the scope of § 1983, interpreting the statute "in light of the strong background principle against federal interference with state taxation." 515 U.S. at 589. In doing so, the Court characterized the Tax Injunction Act "as but a partial codification of the federal reluctance to interfere with state taxation," *id.* at 590, and reasoned that "because of principles of comity and federalism, Congress never authorized federal courts to entertain damages actions under § 1983 *against state taxes* when state law furnishes an adequate legal remedy," *id.* at 587 (emphasis added). Thus, *National Private Truck Council* provides no sound basis for extending the comity doctrine beyond the state tax context.

The doctrine of comity has not spread far from its historical roots in the reluctance to interfere with state tax laws. The reason for the consistency in the doctrine is that the Constitution and § 1983 do not command a specific remedy for unconstitutionally discriminatory taxes, an unusual circumstance discussed below.

II.    **Remedial Flexibility Explains Why the Comity Doctrine Is Confined to Tax Cases.**

5

The Supreme Court's development of the comity doctrine has tethered the historical basis relied on in *National Private Truck Council* and *McNary* to the logical and practical post of remedial flexibility. States may remedy constitutional violations with minimal federal supervision in cases involving the dormant Commerce Clause, the intergovernmental tax immunity doctrine, and the Equal Protection Clause (when there is no suspect classification) because these are all requirements of nondiscrimination. In remedying any constitutional infirmity in these cases, the Constitution is indifferent about whether a state extends or contracts a burden or a benefit (or does some combination thereof).

*Hibbs v. Winn*, the next relevant case, is less important by itself than for how *Levin* later treated it. *Hibbs* involved an Establishment Clause challenge to an Arizona tax program that effectively allowed taxpayers to divert taxes to religious schools. In a footnote, the Court considered the argument that the case should be dismissed under the comity doctrine and rejected it, as the plaintiffs did not seek "district-court aid in order to arrest or countermand state tax collection." *Hibbs*, 542 U.S. at 107 n.9. Relying on this footnote, the *Levin* plaintiffs, challenging under the Equal Protection and dormant Commerce Clauses a tax law that did not implicate a fundamental right or a suspect class, creatively requested the district court not to lower their own tax burden but to raise that of their competitors.

*Levin* distinguished *Hibbs* with reasoning that forecloses a comity challenge to the Cab Companies' suit here. It first noted that the statute at issue, one that taxed differently public utilities and independent corporations that provided natural gas, was "economic

6

legislation [that] does not employ classifications subject to heightened scrutiny or impinge on fundamental rights." 560 U.S. at 426. The Court then underscored that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Id.*

Next, the Court stressed that "[o]f *key importance*, when unlawful discrimination infects tax classifications or other legislative prescriptions, the Constitution simply calls for *equal treatment*. How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent." *Levin*, 560 U.S. at 426–27 (first emphasis added). The Court developed this theme at length. It discussed how the remedy sought by the challengers in *Levin* could interfere with Ohio's legislative prerogatives in a way the Constitution did not command. *Id.* at 429. And it reiterated that, in *Hibbs* and in prior cases that had challenged state allocations of tax revenue to maintain racially segregated schools, "only one remedy would redress the plaintiffs' grievance: invalidation of the credit. . . . Because state courts would have no greater leeway than federal courts to cure the alleged violation, nothing would be lost in the currency of comity or state autonomy by permitting the *Hibbs* suit to proceed in a federal forum." *Id.* at 431. The constitutional command of equal treatment, and nothing more, was also present in *National Private Truck Council* and *McNary*, discussed above, as well as in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), and *McKesson v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), the cases the District Court cited in dismissing this suit.

Remedial flexibility synthesizes the Supreme Court's comity cases: informed by a historical reluctance to upend state tax systems, when a constitutional violation does not require a specific remedy and the available choices implicate sensitive policy questions best left up to state governments, the federal courts will not interfere. However, § 1983 authorizes, indeed commands, federal courts to interfere in state policymaking that violates individual rights if a specific remedy to the plaintiff is required.

A contrary reading of the comity doctrine would be difficult—dare I write impossible—to square with the well-established narrowness of the traditional abstention doctrines, which clearly do not apply to this case. In particular, if comity were extended to every case where a plaintiff challenged a state practice implicating revenue generation, *Burford* abstention would become irrelevant. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). It allows district courts to decline to hear suits that would result in repeated federal intervention in a complex regulatory scheme and concomitant confusion throughout state government. *Id.* at 327–34; *see also New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 361 (1989) (outlining cases where *Burford* abstention is appropriate). If the comity doctrine were extended to cases like this one, any suit from which a federal court could abstain under *Burford* would much more easily be dismissed on comity grounds, a result hardly consistent with the Supreme Court's admonition that there is only a "narrow range of circumstances in which *Burford* can justify the dismissal of a federal action." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996).[1]

---

[1] Nor are the other abstention doctrines relevant. *Younger v. Harris*, 401 U.S. 37 (1971), applies when a District Court is asked to enjoin an ongoing state criminal case; *Railroad*

8

### III. Even If the Comity Doctrine Should Be Extended, It May Not Be Stretched to This Case.

In the recent case of *Direct Marketing Ass'n v. Brohl*, the Supreme Court

discussed how the Tax Injunction Act did not apply to a challenge to state law reporting

requirements that would affect tax collection, but it left open the question of whether the

"nonjuristictional" comity doctrine would nonetheless bar the suit.  135 S. Ct. 1124,

1133–34 (2015).  Although "the comity doctrine is more embracive than the" Tax

Injunction Act, *Levin*, 560 U.S. at 424, it is not wide enough to capture this case.  This is

in part because the comity doctrine is about the scope of § 1983; *National Private Truck

Council* makes that clear, and it helps explain why the Court allowed the tax suit in

*Hibbs*, an Establishment Clause challenge, and in the cases involving tax benefits to

segregated schools.  Those individual rights—like the right not to be deprived of property

without due process of law—are at the core of § 1983 protection, in areas where federal

supervision is particularly important, whereas dormant Commerce Clause,

intergovernmental tax immunity, and equal protection challenges to tax classifications

---

*Commission v. Pullman Co.*, 312 U.S. 496 (1941), comes into play when an interpretation of state law may moot a federal constitutional case; and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), becomes pertinent when there are parallel federal and state civil cases and four factors (which case was filed first, whether the federal forum is convenient for the parties, whether there is *in rem* jurisdiction, and whether there is a risk of piecemeal litigation that cannot be averted by issue preclusion) balance in favor of abstention.  *Younger* and *Pullman* plainly don't apply, and the *Colorado River* factors weigh in favor of exercising jurisdiction: although the Cab Companies have filed a parallel state suit, the federal case came first, the Eastern District of Pennsylvania is convenient to the parties (all operate in and around Philadelphia), there is no *in rem* jurisdiction here, and issue preclusion can likely attach to whatever judgment comes first.

that do not single out disenfranchised populations were less likely in Congress's mind when it passed the Civil Rights Act of 1871.

Comity also should not apply here because the Constitution, enforced through § 1983, commands a specific remedy (assuming the Cab Companies incurred damages because of a procedural due process violation), unlike in the tax-discrimination cases where a range of remedial options among which the Constitution has no preference can cure the relevant deficiency. Finally, as *McNary*, *Levin*, and *National Private Truck Council* confirm, the comity doctrine is important "*particularly* in the area of state taxation." *McNary*, 454 U.S. at 103 (emphasis added); *see also Levin*, 560 U.S. at 421 ("Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity."); *Nat'l Private Truck Council*, 515 U.S. at 587 (1995) (discussing "longstanding federal reluctance to interfere with state taxation").

The strongest argument that the Commonwealth could raise here for the District Court to favor Pennsylvania courts would be based on a simplistic reading of one paragraph in *Levin*. There the Supreme Court concluded its discussion of the comity doctrine with sentences that the majority opinion's eighth footnote rearranges and decontextualizes:

> First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position. Third, the Ohio courts are better positioned than their federal counterparts to correct

10

any violation because they are more familiar with state legislative preferences and because the [Tax Injunction Act] does not constrain their remedial options.

*Levin*, 560 U.S. at 431–32. I do not, as my colleagues appear to suggest, believe these remarks created a multi-factor test that should be applied mechanistically to future cases; rather, I view them as a summary of a long opinion that turns on two key facts: (1) *Levin* was a tax case, and (2) if the challenged tax was unconstitutional, the state could remedy its violation either by raising taxes for the plaintiffs' competitors, lowering them for plaintiffs, or some combination.

Even if *Levin* created a multi-factor test to be applied to any challenge to any state law, those factors do not counsel in favor of dismissal here. It is true that the Cab Companies seek review of a commercial statute, but, as for the second factor, they are not seeking to improve their "competitive position" because there are not similarly situated competitors unburdened by the PPA's regulation. Third, and relatedly, although the remedial options in any lawsuit may be broad, they are not flexible in this case in the same way that they are in tax cases where a state is to reapportion taxes among the classes that must be treated equally.

## IV.    The Circuit Courts and the "Fees v. Taxes" Line of Cases

For the reasons set forth above, I conclude that the Supreme Court's comity jurisprudence counsels federal courts against dismissing cases on comity grounds unless a state seeks application of the doctrine, the plaintiff challenges a tax, and a range of remedial options is available to the state should a court deem the tax unconstitutional. And I am in good company. Every court of appeals to address the question has applied

11

comity only in state *tax* cases where an adequate state remedy exists. Taxes aside, federal courts must exercise their "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, when presented with constitutional challenges to regulatory fees. The cases describe "taxes" as generally imposed by a legislature, assessed against a broad class of people or entities, and used for general public purposes, while "regulatory fees" are usually imposed by an agency, assessed against a narrow class of persons, and used for the benefit or regulation of those who pay. *See DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 125–26 (4th Cir. 2008); *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1311 (10th Cir. 1999) (conflating comity and Tax Injunction Act and distinguishing between fees and taxes); *see also Kathrein v. Evanston*, 752 F.3d 680, 688–87 (7th Cir. 2014) (adopting distinction between fees and taxes under comity doctrine, but applying different test to determine whether exaction is fee or tax). And several district courts have properly entertained challenges to regulatory fees despite motions to dismiss based on comity. *Pac. Bell Tel. Co. v. City of Hawthorne*, 188 F. Supp. 2d 1169, 1177 (C.D. Cal. 2001); *Attorneys' Liab. Assurance Soc'y v. Fitzgerald*, 174 F. Supp. 2d 619, 629 (W.D. Mich. 2001); *Diginet, Inc. v. W. Union ATS, Inc.*, 845 F. Supp. 1237, 1242 (N.D. Ill. 1994).[2]

---

[2] The one case where a district court dismissed a challenge to regulatory fees on a comity ground involved a dormant Commerce Clause challenge. *Valero Terrestrial Corp. v. Callaghan*, 1995 U.S. Dist. LEXIS 17490 (N.D. W. Va. Sept. 28, 1995), *vacated in part on other grounds sub nom. Valero Terrestrial Corp. v. McCoy*, 50 F. Supp. 2d 564 (N.D. W. Va. 1999), *and further vacated on other grounds sub nom. Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 122 (4th Cir. 2000). *Valero* presented a far better vehicle for expanding the comity doctrine than our case because there the state had multiple remedial options just as in the tax cases. Nonetheless, it was probably wrongly decided. *Scott v.*

Appellees concede that the policy challenged here involves collection of regulatory fees, but they argue that distinguishing between fees and taxes is arid formalism. I disagree. First, the comity doctrine of the *McNary–Levin* line has developed exclusively in the state-tax context, and the cases emphasize specifically "the federal reluctance to interfere with state taxation." *Levin*, 560 U.S. at 424 (quoting *Nat'l Private Truck Council*, 515 U.S. at 590). Second, refraining from federal interference makes particular sense in the tax context because of the remedial flexibility discussed above and stressed in *Levin*.

It is hard for me to imagine (and no court has suggested) a limiting principle to comity other than the historical reluctance to interfere with taxes and the related remedial flexibility. All § 1983 cases affect the public fisc directly or indirectly, and expanding comity to our case would, it seems to me, mean that the doctrine would bar any suit against a state practice that is subject to rational basis review, a radical curtailment of the scope of § 1983 unsupported by cases from any level of the federal judiciary.

*　　*　　*　　*　　*

No court, let alone the Supreme Court, has suggested that the comity doctrine is as broad as the majority's selective quotations from *Levin* and other similarly off-point cases imply.[3] Given that a focus on remedial flexibility and the historical practice of not

---

*Donald*, 165 U.S. 58, 101 (1897) (affirming a federal court's award of damages incurred by violation of the dormant Commerce Clause).

[3] Particularly perplexing is the majority's decision to quote *Levin*'s language about "other legislative prescriptions" as suggesting that maybe comity could apply here. 456 U.S. at at 426. Let's read the rest of the sentence (again): "***Of key importance***, when unlawful ***discrimination*** infects tax classifications or other legislative prescriptions, the

13

interfering with state tax laws harmonizes the Supreme Court's comity and Tax Injunction Act cases as well as the solid wall of other courts of appeals' authority on the distinction between regulatory fees and taxes, I would adopt the distinction between fees and taxes and conclude that comity should not bar the Cab Companies' suit here. I would thus vacate the judgment of the District Court and remand the case with instructions not to consider the red herring called the comity doctrine.

___

Constitution simply calls for *equal treatment*." *Id.* (first two emphases added). This sentence alone exposes the impropriety of applying comity here, all the more so when read in light of a doctrine that has only been applied in the discriminatory tax context (excepting the Northern District of West Virginia, which erroneously, but at least arguably plausibly, extended the doctrine to a different context calling for equal treatment, *see supra* n.2).