**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4045
_____

STEVEN DURST;
REUBEN DURST,
                              Appellants

v.

MATTHEW DURST; HALLORAN & SAGE LLP;
ROBINSON & COLE LLP; KELLEY GALICA-PECK
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-12-cv-05255)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 5, 2016

Before: VANASKIE, SCIRICA and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 19, 2016)
_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Steven Durst and Reuben Durst appeal from orders of the United States District Court for the District of New Jersey, which granted summary judgment motions for all Defendants, and denied the Plaintiffs' motions to amend their complaint and their motion for reconsideration. We will affirm the District Court's orders and final judgment.

Because we write primarily for the parties, who are familiar with the background of this case, we discuss that background only briefly. This litigation involves the Jake Ball Trust (the "Trust"), initially established by Steven Durst ("Steve") as a revocable, inter vivos trust, and converted in 2007 to an irrevocable trust. Steve was the Grantor, and he named his brothers Matthew Durst ("Matt") and Reuben Durst ("Mike") as co-trustees. The lawsuit revolves around issues concerning one asset, the "Millville Asset" (the "Asset").

In November 2005, Steve, who was eligible for a 10% member interest in the Asset, designated Matt, as Trustee of the Trust, to receive that interest. Steve did not read the Operating Agreement connected with the Asset before signing it, and did not notice Section 7.04, which allowed Bruce A. Goodman (who was Steve's boss at the time), to buy out the 10% interest under a certain formula if Steve were to cease his employment with Goodman for any reason. According to the amended complaint, this provision "could effectively destroy the value" of the Asset to the Trust. Dkt. #24 at ¶ 42(c).

2

In May 2010, Steve was terminated, and Goodman advised that he was exercising his option to buy out the Trust's interest in the Asset. Matt, as trustee, filed a lawsuit against Goodman and his company in the Superior Court of New Jersey, Cumberland County, Chancery Division, seeking to have Section 7.04 declared void and unenforceable. The parties to that suit participated in a two-day mediation session; Steve also "participated for a portion of the mediation." Chancery Court decision, Dkt. #12-7 at 11. The parties reached a settlement, and "placed [it] on the record before the [Chancery] Court on October 4, 2011." Id. Following the settlement, Steve "allegedly undertook actions to prevent the settlement from going into effect." Id. at 9. Goodman and his company filed a motion to enforce the settlement, and Steve and Mike filed a cross-motion to set the settlement aside, arguing that the Asset had been undervalued for purposes of the settlement.

The Chancery Court gave Steve and Mike and the parties a little over four months to conduct limited discovery relevant to the motions. In ruling in favor of enforcing the settlement, the Court noted that despite the discovery opportunity, proposed intervenors Steve and Mike did not submit an appraisal or present any other evidence to prove their allegation that the Asset had been undervalued. Id. at 11. The Court found "no compelling circumstances that support setting aside the settlement." Id. The Court rejected Steve and Mike's argument that Matt lacked the authority to enter into a settlement without the approval of co-trustee Mike, since a provision of the Trust allowed

3

any person dealing with the Trust to rely on any Trustee's statement of his authority to act on behalf of the Trust. The Court also concluded that Steve and Mike had "not shown that the settlement was a bad deal for the Trust," and that they had not made any showing "that the Trust would make out better if the settlement were to be set aside." Id. Steve and Mike appealed, but they withdrew the appeal before it was decided.

While the appeal was still pending, Steve and Mike filed the lawsuit that is the subject of the current appeal.[1] The District Court granted Matt's motion for partial summary judgment, see Dkt. #65; granted Robinson & Cole's ("R & C") motion for summary judgment, see Dkt. #99, and then granted Matt's subsequent motion for summary judgment and the summary judgment motions of the other remaining Defendants, see Dkt. #149. The Court also denied Steve and Mike's motion for reconsideration of certain opinions and orders, see Dkt. #147.

Steve and Mike timely appealed. In their brief, they challenge five orders of the District Court: (1) the partial summary judgment grant to Matt; (2) the denial of their motion to amend the complaint to add John Yacovelle, Esq., as a defendant; (3) the summary judgment grant to Defendants Kelly Galica-Peck, R & C, and Halloran & Sage

---

[1] The suit was originally filed in state court by Steve, Mike, and the Trust, against Matt. The state court dismissed the Trust from the suit and Matt then removed the matter to federal court. Steve and Mike later amended the complaint to add claims against Kelley Galica-Peck (who represented Matt as trustee of the Trust beginning in late 2006), and two law firms that she worked for, Halloran & Sage, LLP (until October 2010), and Robinson & Cole, LLP (after October 2010).

4

("H & S"); (4) the denial of Steve and Mike's motion to amend the complaint to add appraiser Parker Benjamin as a defendant; and (5) the denial of their motion for reconsideration.

We turn first to the decisions granting summary judgment. [2] We exercise plenary review over such decisions and review the facts in the light most favorable to the nonmoving party. See Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The District Court first granted Matt's motion for partial summary judgment, concluding that Steve and Mike "should be collaterally estopped from arguing two discrete issues before the court: the value of [the Asset] and the fairness of [the] settlement" reached in the Chancery Court. Dist. Ct. Op., Dkt. #64 at 1-2. The District Court properly looked to New Jersey law to determine the preclusive effect of the Chancery Court litigation, see Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002), and applied New Jersey's five-part issue preclusion test. [3]

---

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291. We may affirm a district court's decision on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

[3] In order for preclusion to apply: "(1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential

We agree with the District Court that the issues of the Asset's value and the fairness of the settlement to the Trust were litigated in the Chancery Court, and that the Chancery Court issued a judgment on the merits in which those two issues were essential. We also agree that although Steve and Mike were not formally joined as intervenors in the action, they were essentially treated as such by the Chancery Court. As the District Court noted, "Through their counsel, they participated in a case management conference and conducted discovery into the value of [the Asset] and the fairness of the settlement"; they also "submitted briefs and argued at oral argument." Dist. Ct. Op., Dkt. #64 at 18. The Chancery Court "took pains to include them as intervenors for this discovery opportunity and for presentation of evidence, briefs and arguments." Id. We agree that they were essentially treated as parties for the purposes of litigation of those two issues, and we thus agree that it was proper to preclude them from relitigating those issues in the District Court. See Ross v. Ross, 705 A.2d 784, 791 (N.J. Super. Ct. App. Div. 1998) ("We hold that a judgment may be binding as an estoppel on a person who, although not nominally or formally a party to the action in which it was rendered, submitted his or her interest in the subject matter of the litigation to the consideration of the court and invited its adjudication thereon.").[4]

to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding." Id.

[4] Steve and Mike have also essentially waived any argument that they were not parties. Their brief contains this caption: "Was the Decision in the Prior Action Asserted Against a Party to the Earlier Adjudication?" App. Br. at 11. But that section of the brief argues

Steve and Mike argue extensively in their brief that the issue of whether Matt exceeded his authority as a Trustee when he entered the settlement was not litigated in the Chancery Court. We agree that the Chancery Court was focused on whether Goodman and his company could rely on Matt's assertion that he was authorized to settle the case, and not on the wider question of whether Matt was correct in that assertion. But the District Court properly granted summary judgment on the issue of Matt's authority, as a claim for breach of fiduciary duty requires a showing of damages. See F.G. v. MacDonell, 696 A.2d 697, 703-04 (N.J. 1997) (fiduciary liable for harm caused by breach of duties imposed by fiduciary relationship). Because the Chancery Court held that the Trust was not harmed by the settlement, Steve and Mike cannot prove damages.[5]

As to summary judgment for the remaining Defendants,[6] Steve and Mike argue only that Galica-Peck lied about when she and R & C knew that appraiser Parker

_____

only that they were not allowed to litigate the *issue* of Matt's authority and fiduciary obligation in the Chancery Court and does not address whether they were treated as parties. See Kopec v. Tate, 361 F.3d 772, 775 n.5 (3d Cir. 2004) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court") (internal quotation marks omitted).

[5] In the District Court, Steve and Mike also alleged that Matt breached his fiduciary duty in other ways, but they did not make such argument in their brief here. Those issues are thus waived. See Kopec, 361 F.3d at 775 n.5; F.D.I.C. v. Deglau, 207 F.3d 153, 169-70 (3d Cir. 2000).

[6] The claims against these Defendants sound in legal malpractice. Under New Jersey law, a legal malpractice claim has three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty

7

Benjamin had valued the Asset at $841,000, rather than $600,000. It is unclear why they believe R & C would be liable. They argue that Galica-Peck testified at her deposition that she knew that the appraisal was $841,000 at the time the trust was converted from revocable to irrevocable. But the conversion occurred in 2007, and Galica-Peck did not join R & C until 2010. We agree with the District Court that R & C could not be liable for actions that Galica-Peck took before she joined their firm.

As for the time after Galica-Peck joined R & C, Steve and Mike argue that Galica-Peck and R & C, by misinforming them that Parker Benjamin's appraisal had not been relied upon in deciding to convert the trust, caused Steve and Mike to miss an opportunity to sue Parker Benjamin "for his failure to account for the devastating impact of Section 7.04." App. Br. at 15. But as the District Court pointed out, Matt testified at his deposition that he believed that the Asset was valued at $600,000, not the $841,000 mentioned by Parker Benjamin, and his co-trustee Mike "never personally relied on advice from [Galica-]Peck in the administration of any Trust matters." Dist. Ct. Op., Dkt. #98 at 29. Thus, Steve and Mike pointed to no evidence showing that the Trustees relied on the Parker Benjamin appraisal, as conveyed by Galica-Peck. We further agree with the District Court that Steve, a self-proclaimed "knowledgeable and sophisticated real estate businessman," who "signed the Operating Agreement in 2005," could not claim to

---

by the defendant, and 3) proximate causation of the damages claimed by the plaintiff." Jerista v. Murray, 883 A.2d 350, 359 (N.J. 2005) (quoting McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001)) (quotation marks omitted).

have reasonably relied on the appraisal, as he is charged with having known the terms of the Operating Agreement, including Section 7.04, when he signed it. Id. at 30. See Marcinczyk v. N.J. Police Training Comm'n, 5 A.3d 785, 789 (N.J. 2010) (in absence of fraud, duress, illegality, or mistake, party to contract is "'conclusively presumed' to understand and assent to its legal effect") (quoting Rudbart v. N.J. Dist. Water Supply Comm'n, 605 A.2d 681, 685 (N.J. 1992)). As there was no reasonable reliance on the Parker Benjamin appraisal, Steve and Mike did not show that Galica-Peck or R & C caused them to forego a meritorious claim against Parker Benjamin.

For the same reasons, Steve and Mike did not point to any evidence raising a genuine issue of fact suggesting that they were harmed by advice that Galica-Peck gave at the time that she was employed at H & S. The District Court thus properly granted Galica-Peck's and H & S's summary judgment motions.

We turn next to Steve and Mike's claim that they should have been allowed to amend their complaint to add attorney John Yacovelle and appraiser Parker Benjamin as Defendants. Steve and Mike did not timely seek reconsideration of the Magistrate Judge's July 25, 2014 and April 10, 2015 orders denying their motions to amend. See 28 U.S.C. § 636(b)(1)(B) (non-dispositive matters may be decided by Magistrate Judge); Fed. R. Civ. P. 72(a) (party may object to magistrate judge's order in non-dispositive matter within 14 days, and "may not assign as error a defect in the order not timely objected to"); D.N.J. Local Rule 72.1(c)(1) (party may appeal Magistrate Judge's

9

determination in non-dispositive matter within 14 days).  Thus, to the extent Steve and Mike argue that the Magistrate Judge's decisions were in error, they have waived the right to appeal those decisions.  See Washington v. Hovensa LLC, 652 F.3d 340, 348 (3d Cir. 2011); United States v. Polishan, 336 F.3d 234, 240 (3d Cir. 2003).

Steve and Mike did belatedly seek reconsideration of those orders (as well as the District Court orders granting partial summary judgment for Matt and summary judgment for R & C), on August 10, 2015.  The District Court denied reconsideration, noting first that the reconsideration motion was untimely pursuant to D.N.J. Local Rule 7.1(i), which requires such a motion to be filed within 14 days, as they had "waited at minimum six months before challenging the entry of any of the four orders."  Dist. Ct. Op., Dkt. #146 at 4.  The Court also found the motion procedurally deficient, as they had failed to timely appeal the Magistrate Judge's orders to the District Court pursuant to Fed. R. Civ. P. 72(a), and they had failed to accompany their motion for reconsideration with "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked," pursuant to D.N.J. Local Rule 7.1(i).  Dist. Ct. Op., Dkt. #146 at 4-5.

The District Court nonetheless considered the motion on the merits.  We review a district court's order denying a motion for reconsideration for an abuse of discretion.[7]

---

[7] We note that even though the motion was untimely under the Local Rule (and would have been untimely even if it could be construed as a motion for reconsideration filed pursuant to Fed. R. Civ. P. 59(e)), the District Court did not lack jurisdiction to consider

Max's Seafood Café v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). A motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest, 710 F.3d at 128. The District Court generously construed the "Certification" that Steve had filed in connection with the motion as a brief, and found two possible arguments in support of reconsideration: that denial of the motion would result in manifest injustice, and that new information gained in discovery warranted reopening. Dist. Ct. Op., Dkt. #146 at 6. These two bases essentially boil down to one argument, also presented in their brief here—that the District Court abused its discretion and caused manifest injustice by failing to reconsider its decisions in light of Galica-Peck's April 2015 deposition testimony that she was aware of the $814,000 valuation at the time the trust was converted.

We discern no abuse of discretion here. A district court should be "loathe to [revisit its earlier decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Lesende

the motion. See State Nat'l Ins. Co. v. County of Camden, 824 F.3d 399, 406 (3d Cir. 2016) (district court has inherent power to reconsider prior interlocutory orders at any point while litigation continues). And we have jurisdiction to consider its order denying the motion to reconsider. Cf. Lizardo v. United States, 619 F.3d 273, 277 (3d Cir. 2010) (following Kontrick v. Ryan, 540 U.S. 443, 454 (2004), Fed. R. Civ. P. 59(e) should not be considered a jurisdictional rule; thus, untimely Rule 59(e) motion is no longer considered a nullity); Wiest v. Lynch, 710 F.3d 121, 127 (3d Cir. 2013) ("If the time limit contained within Rule 59(e) is not jurisdictional, we cannot see how the time limit

11

v. Borrero, 752 F.3d 324, 339 (3d Cir. 2014). "The scope of a motion for reconsideration . . . is extremely limited," and should "be used only to correct manifest errors of law or fact or to present newly discovered evidence." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). But while a motion to reconsider can be based on new evidence, "new" in this context means evidence that could not have been submitted to the court earlier, because it was not previously available, not simply evidence submitted after an adverse court ruling. Id. at 415-16. Although Galica-Peck's deposition occurred after the challenged rulings, because Steve and Mike "offer[ed] no explanation for the [over two-year] delay in taking these depositions that forced this testimony to become 'newly discovered' after these four challenged motions were decided," Dist. Ct. Op., Dkt. #146 at 8, the District Court did not abuse its discretion in denying the motion for reconsideration. Further, given the Trustees' and Steve's lack of reliance on the $841,000 valuation, we agree with the District Court that "the deposition testimony presented would not change the outcome of the prior decisions." Id. at 8-9.

For the foregoing reasons, we will affirm the District Court's judgment.

---

contained within [E.D. Pa.] Local Rule 7.1(g) [providing 14 days for reconsideration motion] is jurisdictional.").